OPINION
{¶ 1} Defendant-appellant, Robert E. Drayer (hereinafter "appellant"), appeals from the judgment of the Franklin County Court of Common Pleas finding him guilty of two counts of gross sexual imposition (hereinafter "GSI"), in violation of R.C.2907.05. For the following reasons, we reverse the decision of the trial court.
 {¶ 2} On February 10, 2002, appellant lived at Meadow Park apartment complex (hereinafter "Meadow Park") with his girlfriend, Sherry Carrel and her two sons, Buddy and Cody Carrel. Appellant had been living at Meadow Park for approximately one week.
 {¶ 3} Tricia and Tasha,[1] both fourteen-year-olds, were visitors at Meadow Park on February 10, 2002. Tricia and her sister, Shelly, were spending the weekend with her grandmother, Patricia Hamilton, whose apartment was on the first floor. Tasha and her sister, Kiara, were visiting their sister, Misty, whose apartment was on the second floor.
 {¶ 4} Tricia and Tasha were in the vestibule of the apartment building, outside Ms. Hamilton's apartment, looking through the common-area windows when appellant walked into the building and went upstairs to his apartment. Tricia testified she heard appellant arguing with a female. However, she could not hear what was being said. Tricia stated the argument lasted a couple of minutes. During this time, Ms. Hamilton left to go to the store and locked her apartment door.
 {¶ 5} Appellant returned back downstairs and proceeded to speak with Tricia and Tasha in the vestibule. Trisha testified appellant told them, since they were older than the other kids at Meadow Park, they needed to be role models. Tricia stated appellant continued speaking to them, eventually placing one of his arms around each of their shoulders.
 {¶ 6} In contrast, Tasha testified when he returned to the vestibule, appellant knelt down, and taking the girls' hands in his hands, began telling them they needed to be role models for the smaller children. Moreover, she stated a young boy came down the stairs into the vestibule at this time and appellant yelled at him, telling him to go back upstairs. She then testified appellant rose from his knees and then placed one of his arms around each of them.
 {¶ 7} Tricia testified appellant then commented on the glitter which she had applied to the top of her chest, which was not covered by the short-sleeved blouse she was wearing. While commenting, both girls stated appellant removed his right arm from around Tasha and inserted his right hand down the front of Tricia's blouse. Appellant touched Tricia's breast, including the nipple area, underneath her blouse. Tricia testified the contact lasted from one to five seconds. She proceeded to back away from him and began to cry.
 {¶ 8} Tasha testified appellant then reached around the lower part of her back with his right hand and inserted his hand down her pants. She stated his hand, which was inside her underwear, went halfway down her buttocks. Tasha estimated appellant's hand remained there three to four seconds. Tricia stated Tasha backed away from appellant when this occurred.
 {¶ 9} At this point, the girls' testimony again differs. Tricia testified that appellant then knelt down and took the girls' hands in his. Moreover, while both girls stated a little girl opened the door into the vestibule, and was told to and did leave, only Trisha testified Buddy came downstairs after the little girl left and was told by appellant to go back upstairs. Finally, Tricia, and not Tasha, stated it was at this time appellant stood up and released their hands.
 {¶ 10} Both girls testified Tasha then opened the door and began to leave the vestibule. Tasha stated she decided to stay when she heard Tricia call out her name and turned around and saw appellant grab Tricia's arm.
 {¶ 11} Shortly after, both girls went out the front door and around to the back of the building, whereupon they notified Ms. Hamilton, who called the police.
 {¶ 12} On October 3, 2002, the Franklin County Grand Jury indicted appellant on two counts of GSI, in violation of R.C.2907.05. On July 17, 2003, a jury trial resulted in a verdict finding appellant guilty of both GSI counts.
 {¶ 13} On November 26, 2003, the trial court imposed a period of community control for three years under basic supervision. The trial court did not adjudicate appellant to be a sexual predator.
 {¶ 14} Appellant timely appeals and asserts the following assignments of error:
[1.] The guilty verdicts were not supported by sufficient evidence.
[2.] The guilty verdicts were against the manifest weight of the evidence.
[3.] Appellant was denied a fair trial as a result of prosecutorial misconduct.
[4.] Appellant was denied a fair trial based upon the ineffective assistance of trial counsel.
 {¶ 15} Appellant addresses his first and second assignments of error together as they raise similar issues. Appellant contends the record in the matter satisfies both the sufficiency and manifest weight of the evidence standards. Specifically, appellant argues appellee, State of Ohio (hereinafter "appellee"), failed to prove both the "force" element and the "purpose" mens rea of the "sexual contact" element.
 {¶ 16} In determining whether a record contains sufficient evidence to sustain the conviction, "[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979),443 U.S. 307, 99 S.Ct. 2781.
 {¶ 17} While an appellate court may conclude a judgment of a trial court is sustained by sufficient evidence, it may, nonetheless, conclude the judgment is against the weight of the evidence. State v. Robinson (1955), 162 Ohio St. 486. Weight of the evidence involves:
[T]he inclination of the greater amount of credible evidence,
offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find thegreater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.
 State v. Thompkins (1997), 78 Ohio St.3d 380, 387, citing Black's Law Dictionary (6 Ed. 1990) 1594. (Emphasis sic.)
 {¶ 18} As such, the issue is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt." State v.Nields (2001), 93 Ohio St.3d 6, 25. (Emphasis omitted.)
 {¶ 19} We begin our analysis by examining whether the record contains sufficient evidence of force to sustain appellant's GSI convictions.
 {¶ 20} R.C. 2907.05(A)(1) states, in relevant part:
No person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he offender purposely compels the other person * * * to submit by force or threat of force. {¶ 21} Force is defined in R.C. 2901.01(A)(1) as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." "A defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be used if the victim does not submit." State v. Schaim (1992),65 Ohio St.3d 51, paragraph one of the syllabus. Moreover, "the insertion of the word `any' into the definition of 'force,' recognizes that different degrees and manners of force are used in various crimes with various victims." State v. Lillard (May 23, 1996), Cuyahoga App. No. 69242.
 {¶ 22} Physical force was established when the defendant backed the victim against the wall of an office and the victim stated the defendant placed his arms in such a way that she could not move away from him. State v. Birkman (1993),86 Ohio App.3d 784, 788. Physical force was also established when, after the offender placed his hands on the victim's shoulders and she knocked them away, the offender pushed the victim up against a table and started grabbing the victim. State v. Miley (June 2, 1988), Carroll App. No. 547. Moreover, courts found physical force was demonstrated when perpetrators removed clothing and repositioned the bodies of their sleeping victims. State v.Sullivan (Oct. 7, 1993), Cuyahoga App. No. 63818; Lillard,
supra.
 {¶ 23} However, a finding an offender used force is not limited to physical force. An exception to the requirement of physical force was developed by the Supreme Court of Ohio inState v. Eskridge (1988), 38 Ohio St.3d 56. In Eskridge,
Anthony Eskridge was convicted of raping his four-year-old daughter by the use of force or threat of force. In determining whether the element of force was established, the Eskridge
court held:
The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other. With the filial obligation of obedience to a parent, the same degree of force and violence may not be required upon a person of tender years, as would be required were the parties more nearly equal in age, size and strength.
Eskridge, supra, paragraph one of the syllabus. As such, "[t]his exception allows force to be implied because the parent-child relationship is inherently coercive and obviates the need for overt threats to have been made." State v. Rutan (Dec. 16, 1997), Franklin App. No. 97APA03-389.
 {¶ 24} Subsequent courts have applied the Eskridge
definition to cases in which the alleged offender is not the child's parent. In State v. Byrd, Cuyahoga App. No. 82145, 2003-Ohio-3958, Andrew Byrd was indicted on one count of GSI allegedly committed against a fifteen-year-old girl.[2] The young girl considered Mr. Byrd to be her godfather after her first godfather died. The young girl was spending the night at the house where Mr. Byrd lived. She awoke from sleeping when she felt someone touching her thigh and then her vaginal area over her clothing. The young girl did not see who touched her, but believed it was Mr. Byrd.
 {¶ 25} In examining the issue of whether force was established, the Byrd court first concluded physical force was not established. It then examined whether the principles enunciated in Eskridge should be considered as the young girl considered Mr. Byrd to be her godfather. In declining to apply the lesser showing of force, the Byrd court stated "there was no evidence that the defendant held a position of authority over this victim, or that the contact occurred due to fear or duress."
 {¶ 26} In State v. Jackson, Franklin App. No. 02AP-289, 2003-Ohio-37, Freeman Jackson was convicted of raping his girlfriend's eight-year-old daughter.[3] Specifically, Mr. Jackson inserted his finger into the young girl's vagina.
 {¶ 27} In concluding the element of force, as discussed inEskridge, was not established, the Jackson court held:
* * * [T]here is no evidence of a parent child relationship between [the child] and [Mr. Jackson]. The record does not indicate that [Mr. Jackson] was an authority figure in the house, even though [he] had been living with [the child's] mother. * * * While this court recognizes the offense of rape is an act of force and violence in and of itself, the courts have made it clear that, in order to sustain a rape conviction of a child under thirteen with the additional element of force, there must be some force or compulsion in addition to the act of rape itself in order to sustain a conviction with the added element of force. This court finds that the record is insufficient to support a finding as to force.
Id. at ¶ 121.
 {¶ 28} In determining whether force was established, it must be noted, contrary to appellee's assertion, the circumstances which occurred after the sexual contact cannot be considered in determining whether appellant used force to compel sexual contact with Tricia and Tasha. Instead, the relevant time-frame includes the events leading up to, and during, the sexual contact.
 {¶ 29} In this matter, Tricia's and Tasha's accounts of what occurred prior to the sexual contact vary. Tricia testified the only physical contact between appellant and the two girls prior to the sexual contact was when appellant placed his arms around their shoulders while he talked to them about being role models. To the contrary, Tasha testified their encounter with appellant began with him on his knees, holding their hands in his, while telling them they should be good role models. Tasha then testified appellant stood up and placed his arms around them.
 {¶ 30} Regardless of which account is accurate, the record does not establish physical force. Tricia testified she never told appellant to leave her alone during the time appellant's arm was around her shoulders. Additionally, neither Tricia nor Tasha stated that, prior to, or at the time of, the sexual contact, appellant physically constrained them. To the contrary, Tricia stated she backed away from appellant when he placed his hand down the front of her shirt. Similarly, Tasha testified she turned around from appellant when he placed his hand down the back of her pants. Moreover, both girls testified appellant removed his right arm from around Tasha's shoulder and then placed it down the front of Tricia's blouse. Thus, Tasha was not constrained by appellant at this point in time. Further, while the testimony revealed appellant placed his right hand down the back of Tasha's pants, there was no evidence establishing his left arm was placed back around her shoulder or that he had a hold of her in any other way. Additionally, there is no evidence appellant repositioned either Tricia or Tasha in order to compel the sexual contact. Therefore, the use of physical force by appellant to compel the sexual contact is not supported by the evidence.
 {¶ 31} Moreover, force is not found when the considerations of Eskridge are considered. Force cannot be established by the mere fact appellant is an adult. Instead, there must be some evidence of him being an authority figure over Tricia and Tasha.Jackson, supra. In this matter, there was no evidence to support this finding. There was no evidence of a relationship between appellant and the two girls, as a result of which appellant could exert authority. To the contrary, the girls hardly knew appellant at the time of the incident. He had been living in the apartment complex for a week and Tricia stated she did not even know his name at the time of the incident. Tasha testified her only contact with appellant was him saying "Hey baby" to her soon after he moved into the apartment building. As such, appellant was virtually a stranger to Tricia and Tasha.
 {¶ 32} Additionally, while appellant was older and physically larger than both Tricia and Tasha, these facts, in and of themselves, are insufficient to establish force. As discussed inJackson, force was not established in a situation involving an adult male, who was living in the household, and an eight-year-old girl. As such, we are unable to conclude force is present in a situation involving two fourteen-year-old girls and an adult male.
 {¶ 33} While we do not intend to minimize what occurred in this matter, we are unable to conclude force was established under the facts before us. To echo the analysis of Jackson, to sustain a gross sexual imposition conviction, the sexual contact must be accompanied by some force or compulsion. Otherwise, what is before the court is an act of sexual imposition.
 {¶ 34} Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could not have found the essential element of force proven beyond a reasonable doubt. Accordingly, as there is insufficient evidence of force, appellant's first assignment of error pertaining to force is hereby sustained. The remaining assignments of error are hereby deemed moot. The judgment of the Franklin County Court of Common Pleas is hereby reversed. This case is remanded for further proceedings in accordance with law and this opinion.
Cause reversed and remanded.
PETREE, J., concurs in judgment only.
KLATT, J., dissents.
[1] Due to the young ages of the girls, we will not refer to their last names.
[2] Mr. Byrd was also indicted on one count of GSI allegedly committed against a fourteen-year-old girl. However, the circumstances surrounding the fourteen-year-old girl are not relevant to our discussion of force in this matter.
[3] There were additional charges with respect to the eight-year-old. Moreover, there were charges involving a fourteen-year-old niece of the girlfriend. We will not discuss these aspects of Freeman as they are not relevant to our discussion of force.