JOURNAL ENTRY AND OPINION
{¶ 1} Defendant, Shawn Barbee, appeals his convictions by a jury on one count of aggravated robbery with two firearm specifications and one count of kidnapping. Defendant further claims the trial court erred when it made post-release control part of his sentence. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} Testimony adduced at defendant's trial established the following facts. Defendant and Tamela Bridget[1] had been friends since 1999. At approximately 7:30 p.m. on September 17, 2002, defendant arrived at Bridget's home on E. 65th street in Cleveland, Ohio.
 {¶ 3} Defendant went to Bridget's looking for a mutual friend known as "J.T." Bridget testified that after she told defendant she did not know where J.T. was, he opened up his jacket and showed her a black gun tucked in his pants' waistband Defendant said, "Come on. Let's go for a ride." She testified, "I felt like I didn't have any choice. And as I said, me fearing for myself, and then my children were there, I went ahead and did leave then."
 {¶ 4} As Bridget got into the front passenger side of defendant's car, she noticed an unknown male go into the backseat. As defendant drove, he demanded Bridget tell him J.T.'s address. When Bridget kept insisting she did not know where J.T. lived, defendant became more angry and turned down a side street. At that point Bridget tried to get out of the car, but the unknown man in the back grabbed her and put a gun to the back of her neck. Defendant instructed her to give up any money she had. Bridget emptied her pockets of about $150.00.
 {¶ 5} When Bridget got out of the car, so did the man with the gun. Once out of the car, the man struck Bridget in the back of the head with the gun. As defendant and the other male drove away, Bridget ran and hid at a nearby house. When she arrived home Bridget called the police.
 {¶ 6} At trial, two police officers, Lavelle and James, confirmed Bridget's description of the events on the 17th and the injuries she received. Weeks later, defendant was arrested and indicted for aggravated robbery and kidnapping.
 {¶ 7} The case proceeded to trial. Both at the close of the state's case and at the end of defendant's case, the defense moved for an acquittal pursuant to Crim.R. 29. The court denied both motions along with a later motion for mistrial because of comments made during the state's closing arguments.
 {¶ 8} Defendant was convicted on both counts as charged. After sentencing, defendant filed this timely appeal, in which he asserts four assignments of error.
"I. The trial court erred by denying appellant's crim.r. 29 motion because the state presented insufficient evidence to establish the elements of kidnapping."
 {¶ 9} Defendant argues his motion for acquittal should have been granted because the state's evidence against him on the kidnapping charge was insufficient.
 {¶ 10} Crim.R. 29(A) governs motions for acquittal and provides for a judgment of acquittal "if the evidence is insufficient to sustain a conviction * * *." Crim.R. 29. "An appellate court's function in reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. A verdict will not be disturbed on appeal unless reasonable minds could not reach the conclusion reached by the trier of fact." State v. Watts, Cuyahoga App. No. 82601, 2003-Ohio-6480 citing State v. Jenks (1991),61 Ohio St.3d 259, 273, 574 N.E.2d 492. "Sufficiency is a test of adequacy." State v. Thompkins (1997), 78 Ohio St.3d 380,386-387, 1997-Ohio-52, 678 N.E.2d 541.
 {¶ 11} In the instant case, defendant was convicted of aggravated robbery and kidnapping. R.C. 2905.01, in part, defines kidnapping as follows:
 {¶ 12} "(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
 {¶ 13} * * *
 {¶ 14} (2) To facilitate the commission of any felony or flight thereafter;
 {¶ 15} (3) To terrorize, or to inflict serious physical harm on the victim or another * * *."
 {¶ 16} Aggravated robbery is defined in R.C. 2911.01, which provides as follows:
 {¶ 17} No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 18} Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;
 {¶ 19} Have a dangerous ordnance on or about the offender's person or under the offender's control;
 {¶ 20} Inflict, or attempt to inflict, serious physical harm on another."
 {¶ 21} In the case at bar, defendant argues the state failed to prove he kidnapped Bridget. He argues there is no evidence that his purpose in removing Bridget from her home was "[t]o facilitate the commission of any felony * * * [or] * * * to terrorize, or to inflict serious physical harm on the victim * * *." We disagree.
 {¶ 22} The evidence establishes that after defendant brandished his gun, Bridget became frightened and was forced to enter defendant's car. Once in the car, Bridget described what happened next.
 {¶ 23} "A: I began yelling, and, you know, just him and I going back and forth, and I'm telling him I didn't know where this person lived, and which caused him to just yank and turn down the little side street, which was East 61st.
 {¶ 24} And I was proceeding to get out of the car, when the gentleman who was behind me had grabbed me from behind and said, "Wait a minute. What you got? What do you got?"
 {¶ 25} And he had a gun, because I felt the barrel on my neck, and I didn't have much on me at the time. I just had like money in my jacket pocket, and I just threw it down.
 {¶ 26} I didn't know what to do. I was so scared, because I've never been in that situation before, and I'm just thinking about me and my safety.
 {¶ 27} * * *
 {¶ 28} Q: Did Shawn Barbee stop the other guy from robbing you?
 {¶ 29} A: No. Shawn didn't.
 {¶ 30} * * *
 {¶ 31} Q: Okay. At any time did anyone strike you?
 {¶ 32} A: Yeah. When I was getting out the car from the front, the other guy, he and I sort of got out the car simultaneously, and he did strike me with the gun.
 {¶ 33} Q: And where did he hit you?
 {¶ 34} A: He hit me like on the — Like on the lower part of my head, but more between my neck and my head.
 {¶ 35} Q: What did you do then?
 {¶ 36} A: * * * I ran and hid like on the side of someone's house, and which caused the lady to come out, and I just sat there and, you know, got myself together, and then I walked home."
 {¶ 37} Tr. 41, 44-45.
 {¶ 38} Bridget testified she was afraid during the entire time she was inside the vehicle; she was afraid for her life because she knew defendant had a gun. She also testified that defendant never did anything to assuage her fear or to stop the robbery as it occurred. To the contrary, defendant assisted the unknown male in the commission of aggravated robbery, a felony. These facts constitute sufficient evidence of kidnapping pursuant to R.C. 2905.01(A)(2).
 {¶ 39} There is also ample evidence that Bridget was terrorized during the entire ordeal she was forced to endure the night of September 17, 2002. This evidence meets the third element of R.C. 2905.01(A)(3).
 {¶ 40} On the record before this court, the state presented sufficient evidence defendant committed the offense of kidnapping. Accordingly, the trial court did not err in denying defendant's motion for acquittal. Accordingly, we overrule defendant's first assignment of error.
"II. The convictions were against the manifest weight of the evidence."
 {¶ 41} Defendant argues that the manifest weight of the evidence does not support his conviction for kidnapping or aggravated robbery.
"In considering a manifest-weight claim, a court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way, and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."
 {¶ 42} State v. Braden, 98 Ohio St.3d 354, 2003-Ohio-1325,785 N.E.2d 439, at ¶ 54.
 {¶ 43} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `"`thirteenth juror'"' and disagrees with the factfinder's resolution of the conflicting testimony."State v. Thompkins (1997),78 Ohio St.3d 380, 387, citing Tibbs v. Florida (1982) 457 U.S. 31, at 42.
 {¶ 44} In the case at bar, defendant asserts that Johnson, his father, was a more credible witness than Bridget. His father testified that defendant was home the night of the 17th. According to defendant, this testimony gives him an ironclad alibi proving that he could not have robbed and kidnapped Bridget. We reject this argument.
 {¶ 45} On direct examination, defendant's father, Charles Johnson testified that September 17, 2002 was his birthday. He stated his family was throwing a surprise birthday party for him that night. To get him out of the house before the party, Johnson's wife asked him go to the store. He said he left to go shopping at "6:00 p.m." and returned "[b]etween seven and 7:30." Tr. 124-125. Johnson testified defendant was there when he returned home and that he remained at the house the entire evening.
 {¶ 46} On cross-examination, however, Johnson's testimony as to the time he returned home wavered.
 {¶ 47} "Q: * * *. Is it your testimony that you left at 6:00 and came back between 7:30 and eight?
 {¶ 48} A: Right. Okay. That's my testimony then."
 {¶ 49} Tr. 139. On further cross-examination, Johnson admitted to being on disability because of poor vision. He also admitted being so intoxicated at his party he could not specifically identify the 15 or 20 people he says were there. Nonetheless, he insisted defendant was at the party the whole night.
 {¶ 50} We do not even need to reach defendant's claim that his father's testimony was more credible than Bridget's. Johnson's credibility as a witness is irrelevant because his uncertainty about the time he arrived home does not conflict with the sequence of events Bridget described.
 {¶ 51} Bridget testified defendant arrived at her house around 7:30 p.m. on the 17th. She also stated she was not in defendant's car that long because they had only gone two-and-a-half blocks from her house when she got out of the car. Johnson said he left his house to go to the store at 6:00 p.m. and believed he may have returned home as late as 8:00 p.m. that same night. Taking Bridget's and Johnson's testimony together, we conclude defendant would have had ample time to accomplish the crimes against Bridget and still attend his father's birthday party by 8:00 p.m. the night of the 17th.
 {¶ 52} Next, defendant claims that the state did not prove Bridget suffered serious physical harm. Pursuant to R.C.2901.01(A)(5) "serious physical harm to persons" means any of the following:
 {¶ 53} "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 {¶ 54} (b) Any physical harm that carries a substantial risk of death;
 {¶ 55} c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 {¶ 56} (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 {¶ 57} (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 58} In State v. Parks, (Feb. 7, 2000), Licking App. No. 99-CA-0076, defendant was convicted of domestic violence. The state proved defendant caused serious physical harm to his girlfriend, who testified that defendant punched her in the arm and chest. A police officer testified that five days later she interviewed the victim and still could see bruises on her right forearm and left breast. See, State v. Burdine-Justice (1998),125 Ohio App.3d 707, 709 N.E.2d 551, (bruises visible days after the event constituted some temporary, serious disfigurement for child); City of Fairfield v. Terry, (July 10, 2000), Butler App. No. CA99-12-213.
 {¶ 59} In the case at bar, Bridget testified the unknown male struck her with a gun in the back of the head. She stated she went to the hospital the next day because of pain and tenderness in the area where she had been struck.
 {¶ 60} Police officers Lavelle and James both testified they saw Bridget's bruises. Officer Lavelle testified she saw bruises on the back of Bridget's neck. Officer James testified that he personally observed Bridget's bruise and that it was "approximately three to four inches in length and approximately, maybe two inches in width * * *." Tr. 102. He identified State's Exhibit 1 as the photograph he took four days after the events on the night of the 17th. The photograph shows bruising still visible on Bridget's neck. Under the statute and case law, we conclude the state proved Bridget suffered serious physical harm.
 {¶ 61} As the "thirteenth juror" weighing the evidence and all reasonable inferences and considering the credibility of the state's witnesses, we conclude the jury did not lose its way in convicting defendant of the crimes charged against him. Defendant's second assignment of error is overruled.
"III. The trial court erred by denying appellant's motion for mistrial because the state's improper comments made by the state in its closing argument amounted to prejudicial error and deprived appellant of a fair trial."
 {¶ 62} Defendant identifies five separate comments made by the state during closing argument, which cumulatively, he argues, denied him a fair trial.
 {¶ 63} As noted in Pang v. Minch (1990), 53 Ohio St.3d 186, ¶ 3 of syllabus:
 {¶ 64} "Great latitude is afforded counsel in the presentation of closing argument to the jury. Included within the bounds of permissible argument are references to the uncontradicted nature of the evidence presented by the advocate. The assessment of whether these bounds are exceeded is, in the first instance, a discretionary function of the trial court, and such determination is not to be reversed on appeal absent an abuse of discretion."
 {¶ 65} Id. citing State v. Champion (1924),109 Ohio St. 281, 289, 142 N.E. 141, 143. The Ohio Supreme Court has articulated the test:
 {¶ 66} "`* * * the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.' Smith v.Phillips (1982), 455 U.S. 209, 219, 102 S.Ct. 940, 947,71 L.Ed.2d 78, 87. See State v. Lott (1990), 51 Ohio St.3d 160,165, 555 N.E.2d 293, 300. When we review a prosecutor's closing argument we ask two questions: "whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." State v. Smith (1984),14 Ohio St.3d 13, 14, 14 OBR 317, 318, 470 N.E.2d 883, 885. The closing argument is considered in its entirety to determine whether it was prejudicial. State v. Moritz (1980), 63 Ohio St.2d 150,157, 17 O.O.3d 92, 97, 407 N.E.2d 1268, 1273."
 {¶ 67} State v. Slagle (1992), 65 Ohio St.3d 597, 606-607,605 N.E.2d 916, 926.
 {¶ 68} In the case at bar, the first comment defendant challenges occurred when the prosecutor referred to Bridget as a "very credible person" telling a "very credible story." "It is improper for an attorney to express his or her personal belief or opinion as to the credibility of a witness or as to the guilt of the accused." State v. Williams, 79 Ohio St.3d 1, 12,1997-Ohio-407, 679 N.E.2d 646, 657. The credibility of witnesses is to be determined by the trier-of-fact. State v. Graham, (May 6, 1993), Cuyahoga App. No. 62471. The prosecutor's comments implicitly express a belief and also attempt to bolster the veracity of the witness. They were therefore improper. It is improper for the prosecutor to draw a conclusion reserved for the jury to make.
 {¶ 69} Because no objection was made to the state's comments, however, defendant has waived all but plain error. State v.Nobles, Cuyahoga App. No. 79264, 2002-Ohio-667; State v. Long
(1978), 53 Ohio St.2d 91, 372 N.E.2d 804. "Plain error exists when but for the error the outcome of the trial would have been different. Nobles, at *6 and * 7, citing State v. Moreland
(1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894.
 {¶ 70} We have carefully reviewed the prosecutor's entire closing argument and the transcript. The jurors were instructed during voir dire and at the end of the case about the credibility of witnesses. They were specifically instructed that only they could assess the credibility of the witnesses. They were also told that the closing arguments of the lawyers did not constitute evidence in the case. With both these instructions and the overwhelming evidence of defendant's guilt, we cannot conclude that the outcome of defendant's trial would have been different, had the state not referred to Bridget's credibility. Even though the prosecutor should not have made any comments about Bridget's credibility, his comments did not affect the fairness of defendant's trial and amounted only to harmless error.
 {¶ 71} Next, defendant says that on page 190 of the trial transcript the state made a reference to "an allegedly unavailable witness." This court, however, does not find in the transcript this reference. Without the correct citation to the statement defendant alleges prejudiced him, we do not need to consider the error he claims. App.R. 16(D);[2] State v.Wilson, (Mar. 8, 2001), Cuyahoga App. No. 77758. We further note that defendant did not object to any of the state's comments on page 190 of the trial transcript until almost a page-and-a-half later. And when the defense did object, that objection did not relate to any statement about an unavailable witness. Because we cannot find the error where defendant directs us, we therefore overrule this part of defendant's assignment of error.
 {¶ 72} The third comment defendant says was improper is the state's interpretation of what it thought "the defense wanted the jury to believe." In closing argument, the prosecutor stated:
"Mr. Shaughnessy wants you to believe that not only is she a scorned lover from three years ago, but that she made this mark on the back of her neck, I guess, and called —"
 {¶ 73} At this point, defendant objected and that objection was sustained by the court. During voir dire, the jury had been instructed about infering anything from objections that are sustained. Moreover, the jury had already been instructed that statements by the attorneys did not constitute evidence. We find no error prejudicial to defendant.
 {¶ 74} Later at page 218 of the transcript, the state referred to Bridget's testimony and stated, "[t]here isn't a shred of evidence to indicate that she would make this up." Defendant argues this statement was meant to assail defendant's silence and his failure to take the witness stand We disagree.
 {¶ 75} The statement does not appear as an attempt to comment on the defendant's silence in the case. Rather, the statement is an analysis of the evidence supporting or contradicting Bridget's testimony. Again, the jury knew it had the sole responsibility of assessing the credibility of Bridget's testimony and that nothing the state said was evidence.
 {¶ 76} Finally, defendant says the state improperly attacked Johnson's credibility by erroneously stating that the crimes against Bridget occurred between 6:45 p.m. and 7:30 p.m. Defendant did not object to this testimony.
 {¶ 77} The evidence establishes that the crimes committed against Bridget occurred within a brief period of time. When Bridget was asked what time defendant called her on the 17th, she testified: "I believe it was a little before seven." Tr. 60. Defendant arrived at her house, "[a]bout maybe 7:30. I'm not for sure." Tr. 61. Bridget testified she was in defendant's car for a short time because defendant had driven only a few blocks from her house when she escaped from the car. Bridget never said what time it was when she arrived back home.
 {¶ 78} On direct examination, Johnson testified he left the house at 6:00 p.m. and returned home between 7:00 and 7:30 p.m. On cross-examination, however, Johnson testified he may have returned home between 7:30 and 8:00 p.m.
 {¶ 79} From this testimony, we conclude defendant could have arrived at Bridget's house around 7:30 p.m., committed the crimes against her, and still attended his father's birthday party by 8:00 p.m. Accordingly, even though the prosecutor misstated that the crimes against Bridget began at 6:45 p.m. instead of closer to the 7:30 time-frame Bridget described, that mischaracterization is not prejudicial to defendant. In reaching this conclusion, we underscore the fact that the state's time-frame of 6:45 p.m. to 7:30 p.m. not only contradicts Johnson's testimony but it also contradicts the time-frame Bridget, the state's own witness, described. The trial court did not abuse its discretion in permitting the state's comments.
 {¶ 80} Having reviewed the entire trial transcript, we do not find any of the prosecutor's closing comments, taken separately or collectively, to "prejudicially affect substantial rights of the defendant." Accordingly, the trial court did not abuse its discretion in allowing the state's comments during closing argument. Defendant's third assignment of error is without merit.
"IV. The trial court failed to adequately advise appellant of post release control in violation of his due process rights."
 {¶ 81} In his fourth assignment of error, defendant contends that the imposition of post-release control should be vacated because the trial court failed to adequately inform him about that part of his sentence.
 {¶ 82} Defendant does not deny the court informed him that he was subject to a five-year term of post-release control. Defendant argues that R.C. 2967.28(B) and (C) requires the trial court to fully explain post-release control and the consequences he would be subject to if he violated that part of his sentence.
 {¶ 83} Sections (B) and (C) of the statute read as follows:
 {¶ 84} "(B) Each sentence to a prison term for a felony of the first degree, for a felony of the second degree, for a felony sex offense, or for a felony of the third degree that is not a felony sex offense and in the commission of which the offender caused or threatened to cause physical harm to a person shall include a requirement that the offender be subject to a period of post-release control imposed by the parole board after the offender's release from imprisonment. Unless reduced by the parole board pursuant to division (D) of this section when authorized under that division, a period of post-release control required by this division for an offender shall be of one of the following periods:
 {¶ 85} For a felony of the first degree or for a felony sex offense, five years;
 {¶ 86} For a felony of the second degree that is not a felony sex offense, three years;
 {¶ 87} For a felony of the third degree that is not a felony sex offense and in the commission of which the offender caused or threatened physical harm to a person, three years.
 {¶ 88} Any sentence to a prison term for a felony of the third, fourth, or fifth degree that is not subject to division (B)(1) or (3) of this section shall include a requirement that the offender be subject to a period of post-release control of up to three years after the offender's release from imprisonment, if the parole board, in accordance with division (D) of this section, determines that a period of post-release control is necessary for that offender."
 {¶ 89} The trial court should also have explained what the consequences of violating those controls may be. Woods v. Telb,89 Ohio St.3d 504, 2000-Ohio-171, 733 N.E.2d 1103; State v.Harris, Cuyahoga App. No. 81677, 2003-Ohio-1003; see also, R.C.2929.19(B)(3).
 {¶ 90} "R.C. 2929.19(B)(3), in part, provides:
 {¶ 91} Subject to division (B)(4) of this section, if the sentencing court determines at the sentencing hearing that a prison term is necessary or required, the court shall do all of the following:
 {¶ 92} * * *
 {¶ 93} (c) Notify the offender that the offender will be supervised under section 2967.28 of the Revised Code after the offender leaves prison if the offender is being sentenced for a felony of the first degree or second degree, for a felony sex offense, or for a felony of the third degree in the commission of which the offender caused or threatened to cause physical harm to a person;
 {¶ 94} * * *.
 {¶ 95} (e) Notify the offender that, if a period of supervision is imposed following the offender's release from prison, as described in division (B)(3)(c) or (d) of this section, and if the offender violates that supervision or a condition of post-release control imposed under division (B) of section 2967.131 [2967.13.1] of the Revised Code, the parole board may impose a prison term, as part of the sentence, of up to one-half of the stated prison term originally imposed upon the offender * * *."
 {¶ 96} This assignment of error is denied insofar as the court properly advised defendant he was subject to post-release control following his prison term.[3]
 {¶ 97} For all the foregoing reasons, the judgment of the trial court is affirmed.
Judgment accordingly.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, P.J., and Kilbane, J., concur.
[1] At the time, Bridget was aged twenty-eight and a single mother of two small children.
[2] App.R. 16(D)) states: "References in the briefs to the record shall be to the pages of the parts of the record involved * * *. If reference is made to evidence, the admissibility of which is in controversy, reference shall be made to the pages of the transcript at which the evidence was identified, offered, and received or rejected."
[3] We further observe, however, that the trial court failed to advise defendant of the consequences of that control: that is, that additional prison time could be imposed as part of his sentence. As a result, the court failed to satisfy the statutory requirement of notice for the parole board to impose any additional prison term should defendant violate the supervision or a condition of such control.