OPINION
{¶ 1} Defendant-appellant, Richard K. Worrell, appeals from the judgment of the Franklin County Court of Common Pleas, whereby a jury convicted appellant of felonious assault, a second-degree felony, in violation of R.C. 2903.11, abduction, a third-degree felony, in violation of R.C. 2905.02, kidnapping, a first-degree felony, in violation of R.C.2905.01, and three counts of rape, first-degree felonies, in violation of R.C. 2907.02.
 {¶ 2} The Franklin County Grand Jury indicted appellant on the above charges on August 16, 2002. Although the charges stem from incidents against appellant's wife, the indictment on the rapes incorrectly specified that the victim was not appellant's spouse. Plaintiff-appellee, the State of Ohio, moved to amend the indictment by deleting the phrase "not his spouse" in reference to the victim. The trial court granted the amendment over appellant's objection.
 {¶ 3} Appellant pled not guilty, and a jury trial commenced. Appellant was disruptive during appellee's opening statement, and the trial court had to instruct appellant that it wanted "absolutely no demonstrations of anything." (Tr. at 50, Vol. I.)
 {¶ 4} Appellee called appellant's wife to testify at trial. Appellant's wife testified that, on July 21, 2002, appellant summoned her upstairs to the bedroom. Appellant spoke in a "firm and tense" manner, and had been "very tense and angry, starting with the prior Sunday." (Tr. at 61, Vol. I.) Appellant's wife testified that she went upstairs "[b]ecause I knew if I didn't, that the consequences would be worse than what might happen upstairs, which I knew when he said, come upstairs, that meant he wanted to have sex." (Tr. at 68, Vol. I.) She then stated that appellant had her lie on the bed, and he forced fellatio by ramming his penis in her mouth. The victim described being unable to breathe and asking appellant to stop. However, appellant ignored her request and rammed his penis in her throat "for longer and longer periods of time before he would take a break." (Tr. at 94, Vol. I.) Appellant's wife noted that she struggled, coughed, and choked during the fellatio.
 {¶ 5} Appellant's wife also testified that appellant forced anal and vaginal sex on her. During the vaginal sex, appellant pulled her hair out and yanked her "tongue into his mouth so hard that it caused a blood blister" on her tongue and "caused the little flap between [her] tongue and [her] gum to tear." (Tr. at 95-96, Vol. I.)
 {¶ 6} Next, according to appellant's wife, on July 25, 2002, appellant grabbed her by the hair, pulled her out of a chair, and started striking her with his knee on her lower back and hip. Appellant held her by the hair to prevent her from leaving and choked her. As a result of the incident, appellant's wife sustained bruising over her lower back and hip.
 {¶ 7} Appellant's wife then testified that she and her children subsequently moved out of the house. She also sought medical treatment at a hospital. Appellant's wife told the medical staff about the physical abuse of July 25, 2002, but refused a rape examination. The medical staff took X-rays of her back and hip to determine whether she sustained fractures. The staff also took a urine sample because appellant's wife complained of frequent urination and pain to her kidneys.
 {¶ 8} Subsequently, appellant's wife testified that she and the children moved back in with appellant and that they went on their scheduled vacation to New Jersey. Appellant's wife indicated that she wore clothes that covered the bruises while on vacation. Additionally, during the vacation, appellant told his wife that her bruises made him feel "like a man and it makes me feel like raping the hell out of you." (Tr. at 134, Vol. I.) Ultimately, appellant's wife decided to terminate the vacation early and made arrangements for her and the children to travel back to Ohio. When appellant's wife returned to Ohio, she obtained an attorney to institute divorce proceedings and reported the July 2002 sexual and physical abuse to law enforcement.
 {¶ 9} Appellant's wife further testified that appellant physically abused her throughout the marriage. Appellant would also damage their property during arguments. Appellant's wife took photos of the damage to the property and the injuries she sustained from the abuse. The trial court admitted the photos into evidence over appellant's objection.
 {¶ 10} Moreover, appellant's wife indicated at trial that appellant had previously threatened to kill her if she called the police on him. When appellant's wife did call the police after a previous incident of physical abuse, appellant punished her with anal sex.
 {¶ 11} Lastly, appellant's wife testified that she pursued charges against appellant "to accomplish justice for what he did to me." (Tr. at 174, Vol. I.)
 {¶ 12} The emergency room doctor that treated appellant's wife also testified. The doctor stated that the bruising on appellant's wife would have generally taken two to three weeks to heal. The doctor also stated that appellant's wife "had reason to be seen in the emergency room." (Tr. at 308, Vol. II.)
 {¶ 13} Appellant also testified at trial. Appellant testified that his wife consented to the sexual contact on July 21, 2002. In addition, appellant described the July 25, 2002 incident as a mutual fight.
 {¶ 14} Appellant admitted at trial to previously hitting his wife with a belt and with his fists. He also indicated that his wife "depends on my leadership." (Tr. at 643, Vol. III.) Moreover, appellant testified that he is approximately six feet tall and that his wife's height is no more than five feet and three inches. In addition, appellant testified that his wife weighs "considerably less" than he. (Tr. at 627, Vol. III.)
 {¶ 15} Next, appellant admitted during appellee's questioning that he might have told a psychologist that he punished his wife with sex. Lastly, appellant told appellee that he blamed law enforcement and prosecutors for pursuing charges against him and destroying his family.
 {¶ 16} At the conclusion of evidence, appellant proposed a jury instruction defining "serious physical harm," an element of felonious assault. R.C. 2903.11. The proposed instruction expanded the statutory definition of "serious physical harm" and stated:
The definition of "serious physical harm to persons" includes: * * * any physical harm involving temporary though substantial disability, such as an injury or illness requiring more or less prolonged hospitalization or bed rest which temporarily interferes with the victim's ability to work, as with a broken limb or mononucleosis; any physical harm involving * * * temporary though serious disfigurement reparable through plastic surgery * * *.
The trial court did not give the proposed instruction to the jury.
 {¶ 17} During deliberations, the jury asked for more information on the terms "disfigurement" and "serious disfigurement" as used in the statutory definition of "serious physical harm." (Tr. at 798, Vol. IV.) The trial court told the jury to determine the terms' normal, every day usage. Id.
 {¶ 18} The jury found appellant guilty as charged, and the trial court held sexual predator and sentencing hearings. At the sexual predator hearing, appellee relied on the pre-sentence investigation report and the evidence admitted at trial to establish that appellant is a sexual predator. In the pre-sentence investigation report, appellant's wife stated that her bruising lasted for six weeks, that she had nightmares and sleepless nights for weeks after the July 2002 incidents, and that she has been in counseling since the incidents. The trial court adjudicated appellant a sexual predator.
 {¶ 19} At the sentencing hearing, the trial court merged the felonious assault and abduction charges into the kidnapping charge. The trial court sentenced appellant to consecutive prison terms of five years on each rape charge and four years on the kidnapping charge. Thus, the trial court did not sentence appellant to the minimum authorized sentences even though he had not previously served a prison term.
 {¶ 20} Appellant appeals, raising eight assignments of error:
I. The trial court erred in allowing the state to amend counts I, II and III from alleging rape of a non spouse pursuant to 2907.02(a)(1) to rape of a spouse pursuant to 2407.02(a)(2) [SIC] rather than requiring the state to resubmit the matter to the grand jury thereby depriving defendant of his constitutional right to grand jury consideration.
II. The trial court erred in allowing the state to introduce massive amounts of evidence, both testimony and exhibits of other alleged acts of defendant that were not part of the charges upon which defendant was being tried.
III. The trial court erred in refusing to give defendant's requested jury instruction clarifying the term serious physical harm to the jury.
IV. The convictions for rape, [Kidnapping], felonious assault and abduction are not supported by the evidence required by law.
V. The conviction for rape, [Kidnapping], felonious assault and abduction are against the manifest weight of the evidence.
VI. The trial court having failed to make required findings and the evidence not supporting any such finding the imposition of consecutive sentences is contrary to law.
VII. The trial court erred by imposing more than a minimum sentence on any count and failing to make the required findings to justify imposing more than a minimum sentence.
VIII. The trial court's finding the defendant to be a sexual predator is not supported by the quantum of evidence required by law and is contrary to law.
 {¶ 21} Appellant's first assignment of error concerns the trial court's decision to allow appellee to amend the rape counts in the indictment by deleting the phrase "not his spouse" in reference to the victim. Appellant asserts that his right to an indictment by a grand jury under Section 10, Article I, of the Ohio Constitution required appellee to pursue a new indictment without the phrase "not his spouse." We disagree.
 {¶ 22} Crim.R. 7(D) allows a trial court to amend an indictment if the amendment does not change the name or identity of the charged crime. A trial court commits reversible error by allowing an amendment that changes the name or identity of the charged crime. State v. Smith,
Franklin App. No. 03AP-1157, 2004-Ohio-4786, at ¶ 10. Otherwise, we apply an abuse of discretion standard to review the trial court's decision to allow a Crim.R. 7(D) amendment. Smith at ¶ 10. An abuse of discretion connotes more than an error of law or judgment; it entails a decision that is unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 23} Here, appellant argues that the amendment to the indictment changed the identity of the rape charges. Although the original indictment on the rape charges only referenced R.C. 2907.02 with no particular division, appellant asserts that the amendment transformed the rape charges from R.C. 2907.02(A)(1) to 2907.02(A)(2.)
 {¶ 24} Appellant suggests that appellee originally indicted him under R.C. 2907.02(A)(1) because the indictment mentioned the phrase "not his spouse" in reference to the victim. R.C. 2907.02(A)(1) states, in part:
(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
(a) For the purpose of preventing resistance, the offender substantially impairs the other person's judgment or control by administering any drug, intoxicant, or controlled substance to the other person surreptitiously or by force, threat of force, or deception.
(b) The other person is less than thirteen years of age * * *.
(c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age * * *.
 {¶ 25} Appellant contends that appellee altered the rape charges to R.C. 2907.02(A)(2) when it deleted the phrase "not his spouse." R.C.2907.02(A)(2) makes no reference to the victim being a spouse and states that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
 {¶ 26} To support his contention that the trial court erred by allowing appellee to amend the indictment from R.C. 2907.02(A)(1) to2907.02(A)(2), appellant relies on State v. Woody (1986),29 Ohio App.3d 364. In Woody, the First District Court of Appeals concluded that a trial court erred by allowing the state to amend language in a theft indictment to effectively alter the theft charge from R.C. 2913.02(A)(1) to 2913.02(A)(2.) Woody at 364. According to the appellate court, the amendment changed the identity of the theft charge. Id. at 365.
 {¶ 27} However, appellant's reliance on Woody is misplaced because appellee did not transform the rape charges from R.C. 2907.02(A)(1) to2907.02(A)(2) when it deleted the phrase "not his spouse" from the original indictment. The original indictment did not reference R.C.2907.02(A)(1) provisions, i.e., a defendant: (1) impairing a victim with "any drug, intoxicant, or controlled substance," (2) raping a victim "less than thirteen years of age," or (3) raping a victim with a "mental or physical condition or because of advanced age." Rather, the original indictment tracked R.C. 2907.02(A)(2) by alleging that appellant engaged in sexual conduct after "having purposely compelled" his victim "to submit by force or threat of force."
 {¶ 28} Thus, the indictment continued to track language in R.C.2907.02(A)(2) when appellee amended it. Therefore, appellee did nothing more than correct the victim's identity when it removed the phrase "not his spouse" from the rape charges. Courts may allow the state to amend an indictment to correct the victim's identity. See Dye v. Sacks (1962),173 Ohio St. 422, 425; State v. Owens (1975), 51 Ohio App.2d 132, 149;State v. Johnson, Cuyahoga App. No. 81692, 2003-Ohio-3241, at ¶ 20. Such an amendment does not change the name or identity of a charge, but corrects "a misdescription of the victim" and is "purely a matter of form and not of substance." Sacks at 425.
 {¶ 29} Appellant further contends that appellee changed the identity of the rape charges by altering defenses available to appellant. Specifically, appellant claims that the amendment prohibited him from claiming that the victim was actually appellant's spouse, contrary to the indictment. In making this contention, appellant asserts that the amended indictment triggered R.C. 2907.02(G), which states that it "is not a defense to a charge under division (A)(2) of this section that the offender and the victim were married." However, R.C. 2907.02(G) applied to the original indictment because, as noted above, the indictment had always alleged rape offenses under R.C. 2907.02(A)(2). See State v.Stricker, Franklin App. No. 03AP-746, 2004-Ohio-3557, at ¶ 17. Appellant's defense pertaining to his marriage to the victim only applied to the original indictment because it misidentified the victim. The trial court properly allowed appellee to clarify the victim's identity by deleting the phrase "not his spouse" in reference to the victim.
 {¶ 30} Accordingly, appellee did not change the name or identity of the rape charges when it amended the indictment. As such, we conclude that the trial court did not abuse its discretion by allowing the amendment, and we overrule appellant's first assignment of error.
 {¶ 31} In his second assignment of error, appellant asserts that the trial court erred by allowing appellee to introduce into evidence exhibits and testimony pertaining to appellant's prior threats and acts of violence toward his wife and their property. Appellant argues that the evidence is inadmissible because the threats and acts of violence occurred prior to the July 2002 incidents alleged in the indictment. We disagree.
 {¶ 32} We review a trial court's admission of evidence under an abuse of discretion standard. State v. Robb (2000), 88 Ohio St.3d 59, 68. "Evidence of other crimes, wrongs, or acts" may be admissible "as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B). Thus, we previously held that "all of the circumstances" surrounding alleged sexual contact are relevant to the forcible element of rape and related offenses. Statev. Drayer, 159 Ohio App.3d 189, 2004-Ohio-6120, at ¶ 5, vacating Statev. Drayer, Franklin App. No. 03AP-1033, 2004-Ohio-5061. Therefore, pursuant to Evid.R. 404(B), "`[e]vidence of physical, emotional, and verbal abuse upon the victim or other family members, even if not included in the indictment, has been permitted in numerous jurisdictions'" in cases involving rape and related sex offenses. Statev. Madsen, Cuyahoga App. No. 82399, 2003-Ohio-5822, at ¶ 27, quotingState v. Williamson, Cuyahoga App. No. 80982, 2002-Ohio-6503.
 {¶ 33} Because rape cases charged under R.C. 2907.02(A)(2) require proof of force or threat of force, evidence of the defendant's physical and psychological abuse upon the victim is "relevant and probative of a method of control used to force sex upon the victim" and is "inextricably related" to the rape charge. Madsen at ¶ 27. Likewise, evidence of a defendant's prior physical abuse upon a victim explains the victim's acquiescence to the sexual abuse. State v. Doup, Knox App. No. 02CA000008, 2002-Ohio-6981, at ¶ 48.
 {¶ 34} Accordingly, here, evidence of appellant's abusive relationship with his wife depicted the threat of force that appellant used to commit the rapes. Similarly, the evidence explained appellant's wife's state of mind during the rapes and her submission to his threat of force. Therefore, we conclude that the trial court did not err by admitting into evidence appellant's prior threats and violent acts. As such, we overrule appellant's second assignment of error.
 {¶ 35} Appellant's third assignment of error concerns his proposed jury instruction on "serious physical harm." Pursuant to R.C.2901.01(A)(5)(d), "serious physical harm" includes "some temporary, serious disfigurement." Appellant's proposed instruction expanded the definition of "serious physical harm," but the trial court refused to incorporate it in its instructions. Appellant argues that the trial court erred by refusing to provide the instruction. Appellant reasons that the jury needed the expanded definition of "serious physical harm" to explain the terms "temporary, serious disfigurement." In making this contention, appellant notes that the jury requested more information on the definitions of "disfigurement" and "serious disfigurement." We disagree with appellant's contentions.
 {¶ 36} "[I]t is prejudicial error in a criminal case to refuse to administer a requested charge which is pertinent to the case, states the law correctly, and is not covered by the general charge." State v.Group, 98 Ohio St.3d 248, 2002-Ohio-7247, at ¶ 108. However, "amplification of statutory definitions is inadvisable, is likely to introduce error, and is to be done, if at all, only with extreme care not to prejudice either party to a criminal case." State v. Mahoney (1986),34 Ohio App.3d 114, 119.
 {¶ 37} Mahoney involved an aggravated vehicular homicide case, which requires reckless intent. Id. at 115, 119. The defendant requested that the trial court provide jury instructions that elaborate on the term "perverse" as used in the statutory definition of reckless in R.C.2901.22(C). Id. at 118. The trial court refused to provide the instruction and instead provided the jury with the statutory definition of reckless. Id. at 119. The First District Court of Appeals concluded that the trial court did not err by failing to provide the instruction. Id. at 120. The appellate court reasoned that "[t]he adjective `perverse' and the adverb `perversely' are not words so arcane, so unusual or used so rarely in written or verbal exchanges as to be beyond the comprehension of ordinary citizens." Id. The appellate court further noted that the trial court properly gave the jury the "exact provisions of the pertinent" statutory definition of reckless. Id.
 {¶ 38} Here, the trial court was not required to amplify the term "serious physical harm" to explain "disfigurement" and "serious disfigurement." Neither "serious physical harm," "disfigurement," nor "serious disfigurement" are "so arcane, so unusual or used so rarely in written or verbal exchanges as to be beyond the comprehension of ordinary citizens." See Mahoney at 120. Moreover, as Mahoney warns, it would have been inadvisable for the trial court to provide appellant's amplified definition of "serious physical harm" because the definition was not a definitive explanation. The definition merely provided examples, as evinced by the introductory phrase, "[t]he definition of `serious physical harm to persons' includes." Thus, like Mahoney, the trial court properly informed the jury of "serious physical harm" through the statutory definition contained in R.C. 2901.01(A)(5), and the trial court did not need to amplify the term.
 {¶ 39} Therefore, we conclude that the trial court did not err by refusing to give appellant's proposed jury instruction on the definition of "serious physical harm." Thus, we overrule appellant's third assignment of error.
 {¶ 40} We next address appellant's fourth and fifth assignments of error, which concern his convictions for rape, kidnapping, abduction, and felonious assault. Appellant first maintains that his convictions are based on insufficient evidence. We disagree.
 {¶ 41} Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. We examine the evidence in the light most favorable to the state and consider whether any rational trier of fact could have found that the state proved beyond a reasonable doubt the essential elements of the crime. State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, followingJackson v. Virginia (1979), 443 U.S. 307; State v. Yarbrough,95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 78. We will not disturb the verdict unless we determine that reasonable minds could not arrive at the conclusion reached by the trier of fact. Jenks at 273. In determining whether a conviction is based on sufficient evidence, we do not assess whether the evidence is to be believed, but, whether, if believed, the evidence against a defendant would support a conviction. See Jenks,
paragraph two of the syllabus; Yarbrough at ¶ 79 (noting that courts do not evaluate witness credibility when reviewing a sufficiency of the evidence claim); State v. Lockhart (Aug. 7, 2001), Franklin App. No. 00AP-1138.
 {¶ 42} Here, the jury convicted appellant on three counts of rape based on vaginal and anal intercourse, and fellatio. As indicated above, appellant's rape charges are based on his engaging "in sexual conduct" with his wife by purposely compelling her to submit by "force or threat of force." See R.C. 2907.02(A)(2). In challenging his rape convictions, appellant argues that the record is devoid of evidence that establishes that he purposely compelled his wife to submit to the sexual conduct by force or threat of force.
(A) A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.
R.C. 2901.22(A).
 {¶ 43} Force means "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C.2901.01(A)(1). Force and threat of force "can be inferred from the circumstances surrounding sexual conduct." State v. Schaim (1992),65 Ohio St.3d 51, paragraph one of the syllabus. Thus, "[a] defendant purposely compels another to submit to sexual conduct by force or threat of force" by creating "the belief that physical force will be used if the victim does not submit" to the defendant's actions. Id. Similarly, the forcible element of rape is established through a defendant overcoming a victim's will by fear or duress. State v. Fowler (1985),27 Ohio App.3d 149, 154; see, also, State v. Martin (1946),77 Ohio App. 553, 554 (concluding that, "where a woman is affected by terror or is in fear of great bodily injury and harm, brought into being by an accused, who has placed his victim within his power and control, intercourse under such circumstances without consent is rape * * * when it is shown that her will was overcome by the fear or duress").
 {¶ 44} Here, appellant repeatedly physically abused and threatened his wife during the marriage, establishing an environment of violence in the household. Appellant exerted control over his wife's will through such behavior, causing her to comply with his request to come upstairs to the bedroom on July 21, 2002. Appellant compounded this fear by speaking to his wife in a "firm and tense" manner when telling her to come upstairs. (Tr. at 61, Vol. I.) Likewise, appellant had been "very tense and angry, starting with the prior Sunday." Id. Appellant's use of force during the rapes also stems from his pulling out his wife's hair, yanking his wife's tongue into his mouth, and ramming his penis in her mouth, causing her to struggle, cough, and choke.
 {¶ 45} Appellant's wife's failure to physically resist does not negate the forcible element of the rapes. State v. Hurst (Mar. 7, 2000), Franklin App. No. 98AP-1549. In prosecutions for rape, the victim need not demonstrate physical resistance from the offender. R.C. 2907.02(C). Rather, the absence of such physical resistance "highlights the frightful experiences and threat of force present during the sexual encounter." Id.
 {¶ 46} Thus, contrary to appellant's assertions, he purposely used force and threat of force to compel his wife to submit to the sexual conduct on July 21, 2002. Because we find the necessary element of force to exist in this case, we conclude that the rape convictions are based on sufficient evidence.
 {¶ 47} Appellant also challenges his felonious assault conviction. R.C. 2903.11(A)(1) defines felonious assault and states, in pertinent part, "[n]o person shall knowingly * * * [c]ause serious physical harm to another." Serious physical harm includes "some temporary, serious disfigurement." R.C. 2901.01(A)(5)(d). Here, appellee asserted that appellant's wife suffered "temporary, serious disfigurement" through bruises she sustained when appellant struck her in the lower back and hip on July 25, 2002.
 {¶ 48} In challenging his felonious assault conviction, appellant contends that a bruise does not constitute serious physical harm. In support, appellant relies on State v. Massey (1998), 128 Ohio App.3d 438. In Massey, the First District Court of Appeals concluded that a child's bruise on her head did not constitute serious physical harm. Id. at 442. The court reasoned that the bruise was "inarguably minor" and that "[w]hen police and the EMT from the fire department arrived at Massey's residence, the child was fine." Id.
 {¶ 49} However, other appellate courts have recognized that bruising constitutes serious physical harm under certain circumstances. The Eighth District Court of Appeals held that a woman sustained serious physical harm through bruises on her neck "approximately three to four inches in length and approximately * * * two inches in width." State v. Barbee,
Cuyahoga App. No. 82868, 2004-Ohio-3126, at ¶ 60. The bruises existed for four days. Id. Likewise, the Twelfth District Court of Appeals concluded that a child's profuse bruising across the buttocks constituted serious physical harm. State v. Burdine-Justice (1998),125 Ohio App.3d 707, 714-715. Similarly, the Twelfth District Court of Appeals concluded that a child suffered serious physical harm through bruising and marks on his buttocks and thighs that caused pain for several days. State v. Krull, 154 Ohio App.3d 219, 2003-Ohio-4611, at ¶ 23.
 {¶ 50} Here, appellant's wife sustained extensive bruising on her lower back and hip. She had to cover these bruises while on vacation. When appellant's wife sought medical treatment for the bruising, the medical staff took X-rays of her back and hip to determine whether she sustained fractures. The medical staff also took a urine sample from appellant's wife because she complained of frequent urination and pain to her kidneys. Moreover, the emergency room doctor indicated that the bruising would have generally taken two to three weeks to heal and confirmed that appellant's wife "had reason to be seen in the emergency room." (Tr. at 308, Vol. II.)
 {¶ 51} Accordingly, like Barbee, Burdine-Justice, and Krull, and unlike Massey, appellant's wife sustained severe bruising that constituted temporary, serious disfigurement. Thus, appellant's wife sustained "serious physical harm" through the bruising, and we find sufficient evidence to support appellant's felonious assault conviction.
 {¶ 52} Appellant further argues that there is insufficient evidence to support his kidnapping and abduction convictions. The kidnapping and abduction convictions stem from appellant committing felonious assault on July 25, 2002. Pursuant to R.C. 2905.01(A)(2), a person commits kidnapping by using force, threat or deception to restrain another for the purpose of committing a felony. Similarly, a person commits abduction by using force or threat to "restrain the liberty of another person, under circumstances which create a risk of physical harm to the victim, or place the other person in fear[.]" R.C. 2905.02(A)(2).
 {¶ 53} Both R.C. 2905.01(A)(2) and 2905.02(A)(2) concern a defendant restraining an individual's liberty. State v. Martin, Franklin App. No. 02AP-33, 2002-Ohio-4769, at ¶ 32. Restraint of liberty means "`to limit one's freedom of movement in any fashion for any period of time.'" Id., quoting State v. Wingfield (Mar. 7, 1996), Cuyahoga App. No. 69229. The restraint may be for any particular duration, even momentary. Id.
 {¶ 54} Here, appellant restrained his wife's liberty during the felonious assault when he grabbed her by the hair, pulled her out of a chair, and held her by the hair to prevent her from leaving. Accordingly, we conclude that there is sufficient evidence to support appellant's kidnapping and abduction convictions.
 {¶ 55} Next, appellant contends that his convictions are against the manifest weight of the evidence. Again, we disagree.
 {¶ 56} In determining whether a verdict is against the manifest weight of the evidence, we sit as a "thirteenth juror." Thompkins at 387. Thus, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id. Additionally, we determine "`whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175; see, also, Columbus v. Henry (1995), 105 Ohio App.3d 545, 547-548. We reverse a conviction on manifest weight grounds for only the most "exceptional case in which the evidence weighs heavily against the conviction." Thompkins at 387. Moreover, "it is inappropriate for a reviewing court to interfere with factual findings of the trier of fact * * * unless the reviewing court finds that a reasonable juror could not find the testimony of the witness to be credible." State v. Brown,
Franklin App. No. 02AP-11, 2002-Ohio-5345, at ¶ 10.
 {¶ 57} Appellant asserts that his convictions are against the manifest weight of the evidence because his wife's testimony was not credible. Appellant reasons that his wife made no rape allegations to the medical staff when she sought treatment for her bruises. However, appellant's wife explained that she did not report the rapes to the medical staff because she was not yet aware that a spouse could be charged with rape.
 {¶ 58} In further support of his challenge to his wife's credibility, appellant notes that she went on a vacation with him after the incidents and did not allege rape until after she instituted divorce proceedings. However, appellant's previous threats and abuse explain his wife's delay in reporting the incidents. As an example, appellant punished his wife with anal sex after she previously called the police after an incident of physical abuse. Appellant also previously threatened to kill her if she called the police on him. Likewise, appellant's wife refutes the allegation that her divorce proceedings motivated her decision to raise the rape allegations. Appellant's wife explained at trial that her "purpose is to accomplish justice for what he did to me." (Tr. at 174, Vol. I.)
 {¶ 59} Moreover, the jury heard evidence that discounted appellant's testimony that the sexual conduct on July 21, 2002, was consensual, and that the July 25, 2002 incident constituted a mutual fight. Appellant confirmed his ability to exert control over his wife's will by noting that "she depends on my leadership." (Tr. at 643, Vol. III.) In addition, appellant is taller than his wife and weighs considerably more than she. Furthermore, appellant admitted to previously hitting his wife with a belt and with his fists.
 {¶ 60} Accordingly, we conclude that appellant's convictions are not against the manifest weight of the evidence. Having also concluded that appellant's convictions are not based on insufficient evidence, we overrule appellant's fourth and fifth assignments of error.
 {¶ 61} Appellant asserts in his sixth assignment of error that the trial court failed to follow statutory guidelines when it ordered him to serve the kidnapping and rape counts consecutive to each other. We disagree.
 {¶ 62} R.C. 2929.14(E)(4) governs when trial courts may impose consecutive sentences and states, in pertinent part:
(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
* * *
(b) * * * [T]he harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 63} A trial court must make specific findings under R.C.2929.14(E)(4) and state its reasons for making those findings. R.C.2929.19(B)(2)(c); State v. McDonald, Franklin App. No. 03AP-853, 2004-Ohio-2571, at ¶ 17. A trial court must provide these findings and reasons during the sentencing hearing. State v. Comer, 99 Ohio St.3d 463,2003-Ohio-4165, at ¶ 20. Likewise, the record must support the trial court's findings and reasons by clear and convincing evidence. R.C.2953.08(G)(2)(a). Clear and convincing evidence is:
* * * "* * * [T]hat measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." * * *
State v. Eppinger (2001), 91 Ohio St.3d 158, 164, quoting Cross v.Ledford (1954), 161 Ohio St. 469, 477.
 {¶ 64} We will remand a sentence if the trial court failed to make the requisite statutory findings and reasons to support such findings or made findings and reasons devoid of evidentiary support. State v. Altalla,
Franklin App. No. 03AP-1127, 2004-Ohio-4226, at ¶ 7.
 {¶ 65} Here, appellant claims that the trial court failed to make the required findings when imposing consecutive sentences. However, the trial court recognized that consecutive sentences are necessary to protect the public from future offenses and to punish appellant. In addition, the trial court indicated that consecutive sentences are not disproportionate to the seriousness of the offenses. Furthermore, the trial court found that consecutive sentences are not disproportionate to the danger that appellant poses to the public when it noted that "we need to adequately protect the public" through consecutive sentences because "[t]he harm was unusual" in this case. (Tr. at 837, Vol. V.) Lastly, the trial court recognized that consecutive sentences are warranted because of the "unusual" harm caused by the multiple offenses. Id. Thus, the trial court made the statutorily enumerated findings in R.C. 2929.14(E)(4).
 {¶ 66} Appellant also contends that the trial court failed to specify the requisite reasons to support its findings and that the evidence does not support consecutive sentences. However, in justifying consecutive sentences, the trial court specified that appellant caused "unusual" psychological and physical harm to his wife when committing the rapes and kidnapping.
 {¶ 67} The record supports such a conclusion by clear and convincing evidence. During the rapes, appellant pulled his wife's hair out. Appellant also yanked his wife's "tongue into his mouth so hard that it caused a blood blister" and "caused the little flap between [her] tongue and [her] gum to tear." (Tr. at 95-96, Vol. I.) Moreover, appellant exerted control over his wife and caused her to submit to the rapes through years of physical abuse and threats. See Schaim, paragraph one of the syllabus. During the July 25, 2002 kidnapping, appellant choked his wife and struck her, causing bruising that took weeks to heal. Moreover, as a result of the rapes and kidnapping, appellant's wife has sought counseling and experienced nightmares and sleepless nights.
 {¶ 68} The trial court also substantiated its finding that consecutive sentences are necessary to protect the public from future crime when it recognized that appellant blamed others for his conduct. Clear and convincing evidence supports this finding because appellant's "failure to acknowledge and appreciate the seriousness of his crime demonstrates that [he] was likely to continue such activities, and consecutive sentences [are] necessary to protect the public from this future conduct." Altalla
at ¶ 10.
 {¶ 69} In addition, the trial court recognized appellant's violent nature and the "uncontrolled temper" that appellant "demonstrated over and over again in the course of [his] relationship" with his wife and during the trial. (Tr. at 835, Vol. V.) Appellant's inability to keep control, even in court, supports the trial court's conclusion that consecutive sentences are necessary to protect the public from future crime.
 {¶ 70} For the above reasons, we further conclude that the trial court's recognition that appellant caused his wife "unusual" harm, displayed acts of violence and an "uncontrolled temper," and minimized his conduct are also applicable to support the trial court's finding that consecutive sentences are necessary to punish appellant, and are not disproportionate to the seriousness of appellant's conduct and to the danger appellant poses to the public. Again, the record supports these conclusions by clear and convincing evidence.
 {¶ 71} We recognize that the trial court did not "clearly align each rationale with the specific finding to support its decision to impose consecutive sentences," as expressed in Comer. Id. at ¶ 21. A trial court announces a sentence in such a manner to allow us to "conduct a meaningful review of the sentencing decision." Id.
 {¶ 72} However, we previously upheld a trial court's imposition of consecutive sentences even though the trial court's reasons "for imposing consecutive sentences were not precisely aligned." Altalla at ¶ 10. We upheld the sentences because the trial court's sentencing analysis allowed us to conduct a meaningful review. Id. Likewise, the Twelfth District Court of Appeals upheld a trial court's imposition of consecutive sentences even though the trial court failed to align its reasons with its findings. State v. Ebbing, Clermont App. No. CA2003-05-041, 2003-Ohio-5877, at ¶ 17. The appellate court reasoned that "it is clear from the trial court's discussion in the case before us that the court considered how the statutory factors apply to the facts of this case." Id. Here, like Altalla and Ebbing, the trial court's reasons behind its sentence allowed us to conduct a meaningful review as to why the trial court imposed consecutive prison terms.
 {¶ 73} Accordingly, we conclude that the trial court did not err by imposing consecutive sentences. As such, we overrule appellant's sixth assignment of error.
 {¶ 74} In his seventh assignment of error, appellant argues that the trial court was required to impose the minimum authorized prison sentence on his convictions because he had not previously served a prison term. We disagree.
 {¶ 75} When a trial court imposes a term of imprisonment that is greater than the minimum sentence upon a felon who has not previously served a prison term, the trial court must find that either "the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." R.C. 2929.14(B). The trial court must make its findings at the sentencing hearing. Comer at ¶ 26. However, the trial court need not provide reasons behind its R.C. 2929.14(B) findings. State v. Edmonson
(1999), 86 Ohio St.3d 324, 326; Comer at ¶ 26, fn. 2. The trial court's sentence is "contrary to law" and subject to remand if, by clear and convincing evidence, the trial court failed to make the requisite statutory findings or made findings devoid of evidentiary support.Altalla at ¶ 7.
 {¶ 76} Here, the trial court found that the minimum sentences "would demean the seriousness of these multiple crimes," a factor under R.C.2929.14(B). (Tr. at 836-837, Vol. V.) In addition, the trial court noted that imposing the minimum authorized sentences on appellant's convictions would not adequately protect the public from future crimes by appellant, another R.C. 2929.14(B) factor. Accordingly, the trial court made the requisite findings under R.C. 2929.14(B) to support its decision not to impose minimum sentences.
 {¶ 77} Likewise, the evidence supports by clear and convincing evidence the trial court's finding that minimum sentences would demean the seriousness of appellant's conduct. As noted above, appellant caused his wife significant physical and psychological harm during the incidents, which include three instances of rape.
 {¶ 78} Similarly, the evidence supports by clear and convincing evidence the trial court's finding that minimum sentences would not adequately protect the public from future crimes by appellant. As noted above, appellant's failure to acknowledge and appreciate the seriousness of his crimes demonstrates that he was likely to continue such activities. See Altalla at ¶ 10. Likewise, as above, appellant's "violence" and "uncontrolled temper" demonstrate appellant's inability to keep control and establish his likelihood of continuing such criminal activity. (Tr. at 835, Vol. V.)
 {¶ 79} Accordingly, we conclude that the trial court did not err by imposing more than the minimum sentences for appellant's convictions. As such, we overrule appellant's seventh assignment of error.
 {¶ 80} In his eighth assignment of error, appellant contends that the trial court erred in finding him to be a sexual predator. We disagree.
 {¶ 81} In order for a trial court to find an offender to be a sexual predator, the state must establish by clear and convincing evidence that the offender has been convicted of, or pled guilty to, a sexually oriented offense and is likely to commit one or more sexually oriented offenses in the future. R.C. 2950.01(E)(1); 2950.09(B)(3); Eppinger at 163.
 {¶ 82} In making a sexual predator determination, the trial court considers "all relevant factors, including, but not limited to," those enumerated in R.C. 2950.09(B)(3). Eppinger at 164. The trial court may place as much or as little weight on any of the factors as it deems relevant. McDonald at ¶ 8. Indeed, "[n]o requisite number of these factors must apply before an offender is found to be a sexual predator and the trial court may place as much or as little weight on any of the factors as it deems to be relevant; the test is not a balancing one." Id. Even one or two factors are sufficient as long as the evidence of likely recidivism is clear and convincing. Id.; State v. Hardie (2001),141 Ohio App.3d 1, 5.
 {¶ 83} Here, appellant does not dispute that he was convicted of sexually oriented offenses, but contends that the evidence fails to establish his likelihood of committing future sex offenses. The trial court based its sexual predator finding on appellant's underlying rape offenses, and we conclude that the circumstances of the rape offenses and appellant's background evoke several factors under R.C. 2950.09(B)(3) to establish that appellant is a sexual predator.
 {¶ 84} Appellant "displayed cruelty" during the rapes, a factor under R.C. 2950.09(B)(3)(i). Appellant pulled his wife's hair out and yanked his wife's tongue, causing it to blister and tear. The forced fellatio caused appellant's wife to struggle, cough, and choke.
 {¶ 85} In addition, appellant's wife described the control that appellant exerted over her during their marriage. Appellant confirmed this control by noting that his wife depended on his leadership. Through this control, appellant established an authoritative role over his wife. Appellant's taking advantage of this role is another factor in support of the sexual predator finding. See State v. Messer, Franklin App. No. 03AP-169, 2004-Ohio-2127, at ¶ 17.
 {¶ 86} Next, appellant displayed a "demonstrated pattern" of sexual abuse by previously forcing anal sex on his wife, sexual conduct that appellant has equated with punishment. This pattern of abuse satisfies a factor in R.C. 2950.09(B)(3)(h).
 {¶ 87} Lastly, appellant shows no remorse, but instead blames the rape charges on law enforcement and prosecutors involved in the case. Appellant's lack of remorse and failure to acknowledge the crime weighs in favor of a sexual predator finding. State v. Ibrahim, Franklin App. No. 03AP-900, 2004-Ohio-4220, at ¶ 29.
 {¶ 88} Accordingly, appellee presented sufficient evidence for the trial court to find by clear and convincing evidence that appellant is likely to commit future sexually oriented offenses. Therefore, we conclude that the trial court properly adjudicated appellant a sexual predator. Thus, we overrule appellant's eighth assignment of error.
 {¶ 89} In summary, we overrule appellant's first, second, third, fourth, fifth, sixth, seventh, and eighth assignments of error, and we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Petree and Lazarus, JJ., concur.