[Cite as *State v. Kessler*, 2025-Ohio-1041.]

COURT OF APPEALS
MORROW COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. Kevin W. Popham, J.<br>Hon. David M. Gormley, J. |
| -vs- | |
| JAY KESSLER | Case No. 2023CA0007 |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDINGS:      Appeal from the Morrow County Court of
                               Common Pleas, Case No. 22-CR-0091

JUDGMENT:                      Affirmed

DATE OF JUDGMENT ENTRY:        March 25, 2025

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

DANIEL J. STANLEY                         APRIL F. CAMPBELL
Assistant Crawford County Prosecutor      545 Metro Place South, Suite 100
112 East Mansfield Street, Suite 305      Dublin, Ohio 43017
Bucyrus, Ohio 44820

*Hoffman, P.J.*

**{¶1}** Defendant-appellant Jay Kessler appeals the judgment entered by the Morrow County Common Pleas Court convicting him following jury trial of sexual battery (R.C. 2907.03(A)(5)[1]) and gross sexual imposition (R.C. 2907.05(A)(4)), and sentencing him to an aggregate term of incarceration of eight years. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

**{¶2}** Appellant is the stepfather of three daughters: C.M., H.D., and H.K. The girls were all adults at the time of trial, but when they were minors, Appellant cared for the children both before and after school and during summer vacation while their mother, A.K., worked outside the home. The family lived in a home in Morrow County, which previously belonged to Appellant's grandparents.

**{¶3}** H.D., the middle daughter, was six years old when her mother and Appellant married. When H.D. was seven or eight years old, she was alone in an unattached garage with Appellant. Appellant pulled out his penis and told H.D. if she touched it, white stuff would come out. He placed her hand on his penis.

**{¶4}** H.K., the youngest daughter, sometimes fell asleep on the couch next to Appellant in the evening. Beginning when she was in fifth grade, she would sometimes wake up to find Appellant's hands down her pants, "fingering" her and rubbing her vagina. These incidents occurred at least five times, with the final time occurring when she was fourteen years old.

---

[1] Although the judgment entry of conviction and sentence states Appellant was convicted of a violation of R.C. 2907.03(A)(1), this appears to be a typographical error, as the indictment, jury instructions, and verdict form all refer to both the statutory citation and language of R.C. 2907.03(A)(5).

**{¶5}** In 2020, H.K. went to Florida on vacation with her mother, A.K.. H.K. told her mother Appellant had been molesting her throughout her childhood. In 2014, C.M. told her mother Appellant would withhold her cell phone unless C.M. showed Appellant her breasts, but C.M. later claimed she had lied about the cell phone. However, after the 2020 disclosure by H.K., A.K. left Appellant. The marriage ended in 2021. After Appellant and her mother divorced, H.D. disclosed to her mother Appellant had molested her as well. Upon questioning by her mother, C.M. admitted she told the truth when she said Appellant made her show him her breasts to get her cell phone back, and only claimed she lied because she had been threatened by Appellant's son.

**{¶6}** Appellant was indicted by the Morrow County Grand Jury as follows: count one, rape (H.K.); count two, gross sexual imposition (H.K.); count three, sexual battery (H.K.); count four, rape (H.D.); count five, gross sexual imposition (H.D.), and count six, attempted gross sexual imposition (C.M.). Prior to trial, the State dismissed count four of rape. Count five of gross sexual imposition was renumbered as count four, and count six of attempted gross sexual imposition was renumbered as count five.

**{¶7}** The case proceeded to jury trial in the Morrow County Common Pleas Court. The jury found Appellant guilty of count three of sexual battery against H.K., and count four of gross sexual imposition against H.D. The jury found Appellant not guilty of the remaining charges. The trial court entered judgment convicting Appellant of sexual battery and gross sexual imposition in accordance with the jury's verdict. The trial court sentenced Appellant to 48 months incarceration on each conviction, to be served consecutively, for an aggregate term of eight years incarceration. It is from the July 13, 2023 judgment of the trial court Appellant prosecutes his appeal, assigning as error:

I. KESSLER'S CONVICTIONS SHOULD BE REVERSED BECAUSE THE TRIAL COURT FAILED TO RECORD THE THIRD DAY OF KESSLER'S FELONY TRIAL IN VIOLATION OF CRIM. R. 22, IT DID NOT RECORD THE VERDICT IN VIOLATION OF R.C. 2945.78, IT CANNOT BE CURED BY THE RULE 9 STATEMENT, AND IT VIOLATED KESSLER'S DUE PROCESS RIGHTS UNDER THE FEDERAL AND OHIO CONSTITUTION.

II. BECAUSE THE TRIAL COURT ASKED IMPROPER QUESTIONS, IT DEMONSTRATED BIAS SUCH THAT KESSLER'S CONVICTIONS SHOULD BE REVERSED.

III. THE INTRODUCTION OF INADMISSIBLE EVIDENCE WAS REVERSIBLY PREJUDICIAL IN KESSLER'S TRIAL.

IV. TRIAL COUNSEL WAS PREJUDICIALLY INEFFECTIVE FOR THEIR FAILURE TO OBJECT.

V. THE EVIDENCE WAS LEGALLY INSUFFICIENT FOR SEXUAL BATTERY.

VI. THE EVIDENCE MANIFESTLY WEIGHED AGAINST CONVICTION FOR SEXUAL BATTERY AND GROSS SEXUAL IMPOSITION.

VII. KESSLER'S VERDICT ON THE GROSS SEXUAL IMPOSITION COUNT SHOULD BE REVERSED BECAUSE THE VERDICT FORM DOES NOT COMPLY WITH R.C. 2945.47: THERE WERE NO SPECIAL FINDINGS OR DEGREE OF OFFENSE LISTED ON THE VERDICT

FORMS TO CONVICT KESSLER AND SENTENCE HIM ON MORE THAN A FOURTH-DEGREE FELONY.

VIII. KESSLER WAS DENIED HIS RIGHT TO A FAIR TRIAL IN THIS CASE BECAUSE OF CUMULATIVE ERROR.

I.

{¶8} In his first assignment of error, Appellant argues the trial court erred in failing to record day three of his trial, and the App. R. 9(C) statement filed in this case is insufficient to cure the error given the lack of recollection of Appellant, the court, and the attorneys on numerous issues. We disagree.

{¶9} Crim. R. 22 provides in serious offense cases, the proceedings shall be recorded. R.C. 2945.78 requires the trial court immediately enter "in full upon the minutes" the jury's verdict. In the instant case, day three of trial was inadvertently not recorded. On this day of trial, Appellant testified, closing arguments were made, the jury was instructed, and the jury's verdict was received.

{¶10} However, the failure to record the proceedings is not the end of the inquiry as to error. As this Court has previously held, "Recording equipment is not infallible, and is subject to unanticipated malfunctions. The mere fact that the recording equipment failed does not, in and of itself, constitute reversible error, particularly in light of App.R. 9(C)." *Mansfield v. Rembert*, 2023-Ohio-3787, ¶ 15 (5th Dist.).

{¶11} Although it is the court's responsibility in the first place to record the proceedings, the appellant, if possible, should attempt to use one of the procedures outlined in App.R. 9 to supplement the record for appeal purposes. *In re B.E.,* 2004-Ohio-

3361, ¶ 15. A conviction will not be reversed on the basis of unrecorded proceedings where the defendant has failed to demonstrate: (1) a request was made at trial the conferences be recorded or objections were made to the failures to record, (2) an effort was made on appeal to comply with App.R. 9 and to reconstruct what occurred or to establish its importance, and (3) material prejudice resulted from the failure to record the proceedings at issue. *State v. Palmer*, 80 Ohio St.3d 543, 554 (1997). The nature of the underlying case is immaterial, as the Ohio Supreme Court has allowed criminal defendants to use App.R. 9(C) to supplement the record even in aggravated murder cases, in which the court was obligated to record the proceedings under Crim.R. 22. *In re B.E.* at ¶ 14.

{¶12} The State concedes Appellant was not obligated to request day three of the trial be recorded, as this was a felony trial in which the court was required to record the proceedings pursuant to Crim. R. 22. However, the State argues the App. R. 9(C) statement filed in the instant case was sufficient to reconstruct the record of day three of trial, and Appellant has not demonstrated material prejudice from the failure to record the proceedings on day three.

{¶13} App. R. 9(C)(1) provides:

If no recording of the proceedings was made, if a transcript is unavailable, or if a recording was made but is no longer available for transcription, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement shall be served on the appellee no later than

twenty days prior to the time for transmission of the record pursuant to App. R. 10 and the appellee may serve on the appellant objections or propose amendments to the statement within ten days after service of the appellant's statement; these time periods may be extended by the court of appeals for good cause. The statement and any objections or proposed amendments shall be forthwith submitted to the trial court for settlement and approval. The trial court shall act prior to the time for transmission of the record pursuant to App.R. 10, and, as settled and approved, the statement shall be included by the clerk of the trial court in the record on appeal.

{¶14} In the instant case, Appellant prepared an App. R. 9(C) statement which he submitted to the trial court, and the State also filed its own statement. The trial court approved Appellant's statement, the State's statement, and added its own recollections.

{¶15} Appellant argues he was materially prejudiced by the failure to record his own testimony. Appellant's App. R. 9(C) statement provided he categorically denied every specific sexual allegation. He testified his daughters resented his structure and discipline in his home. He testified he walked H.D. down the aisle on her wedding day, and took another daughter to Olive Garden for her birthday after she made the allegations against him. On cross-examination, he denied drinking too much when his children were with him, and he claimed he worked full-time. The jury asked questions, including why he did not admit his W2's into evidence, to which he responded his ex-wife had his records. The jury asked why there were no bank records, and he could not recall the answer, and the jury asked when his new girlfriend sold the home in which the charged

acts took place, and he could not remember how he answered at trial. More questions were asked by the jury, but no one remembered what these questions were. The trial court asked Appellant about massaging H.K.'s legs after volleyball. He admitted to massaging her legs, but claimed other children were present and it was not sexual in nature.

{¶16} Although the App. R. 9(C) statement includes lapses in the memories of Appellant, the attorneys, and the trial court on parts of Appellant's testimony, we find the statement sufficient to recreate the record as to Appellant's testimony, and we further find Appellant has not demonstrated material prejudice as to the instances in which the parties did not recollect his testimony in full. Defense counsel's closing argument was included in the 9(C) statement because counsel had written out his closing argument beforehand. In closing argument, counsel referred to Appellant's denial of the charges, but did not refer to any other portion of Appellant's testimony to support acquittal. Therefore, it appears from closing argument the material portion of Appellant's testimony was his denial of all allegations of sexual misconduct.

{¶17} Appellant also argues he was materially prejudiced by the failure to record the jury instructions. He specifically notes he was indicted for sexual battery pursuant to R.C. 2907.03(A)(5), but the sentencing entry convicts him of R.C. 2907.03(A)(1). He argues in the absence of the jury instructions, no one knows if the jury was instructed pursuant to subsection (A)(1) or (A)(5). Upon this Court's granting of the State's motion to supplement the record, the written jury instructions and verdict forms were filed with this Court on November 6, 2024. The jury instructions and the verdict form reflect Appellant was instructed pursuant to the indictment on the elements of subsection (A)(5),

and found guilty by the jury of violating R.C. 2907.03(A)(5). We therefore find the recitation of conviction of R.C. 2907.03(A)(1) to be a clerical error in the sentencing entry of the trial court. The trial court's additions to the App. R. 9(C) statement reflect there were no objections to the jury instructions. We find Appellant has not demonstrated material prejudice from the failure of the trial court to transcribe the oral jury instructions, given the written instructions have been provided to this Court and the trial court's 9(C) statement sets forth there were no objections to the jury instructions.

{¶18} Appellant also argues he is unable to argue prosecutorial misconduct on appeal because no one remembers what the prosecutor said. However, the App. R. 9(C) statement as settled by the trial court sets forth there were no objections to the State's closing argument other than a continuing objection to the use of the photos of the girls from 2011 and 2012. Appellant has not assigned error to the admission into evidence of these photographs, and we therefore cannot find Appellant was materially prejudiced by the failure to record the State's closing argument using the photographs which had been admitted into evidence.

{¶19} Finally, Appellant argues no one knows if the jury was polled and the verdict recorded, which are statutory requirements pursuant to R.C. 2945.77 and R.C. 2945.78. R.C. 2945.77 provides the jury "may" be polled at the request of the prosecutor or the defendant. R.C. 2945.78 provides, "When the verdict given is such as the court may receive, it must be immediately entered in full upon the minutes." We note the record does not reflect a lack of recollection as to these matters on the third day of trial, but instead, neither of these issues is addressed in the statement Appellant submitted to the trial court, and were subsequently not addressed by the State or the trial court in attempting to settle

the App. R. 9(C) statement. Because Appellant did not attempt to reconstruct the record on these two issues in his App. R. 9(C) statement, we find he has failed to comply with the second prong of *Palmer, supra*.

{¶20} The first assignment of error is overruled.

II.

{¶21} In his second assignment of error, Appellant argues the trial court erred in its questioning of witnesses. We disagree.

**Abuse of A.K.**

{¶22} Appellant first argues the trial court erred and demonstrated bias against him by asking A.K., the victims' mother and Appellant's ex-wife, if Appellant had ever abused her physically, mentally, or sexually.

{¶23} The question asked of A.K. was not a question by the trial court, but rather was a question submitted by the jury. During cross-examination of A.K., counsel for Appellant asked if she had ever contemplated putting video surveillance equipment in the house. She responded she would have been in trouble had she done so.

{¶24} On redirect, the State questioned A.K. about why she did not put a video camera in the house. A.K. answered she would have been in "trouble" if Appellant found a camera in the house. Tr. 210. The following colloquy ensued:

> Q. How much trouble would you have been in if he caught you videotaping what he was doing in the house?
>
> A. He would have been very angry.
>
> Q. Even more than normal angry?

A. Yeah.

Q. Were you scared?

A. Yeah.

{¶25} At this point, counsel for Appellant objected, and the trial court overruled the objection. The State moved on to another line of questioning.

{¶26} Before the witness left the stand, the trial court allowed the jurors to submit questions in writing. The trial court went over the questions with counsel at sidebar. The third question, while not read aloud at sidebar, appears from context to be the question later read to the witness about physical, sexual, and mental abuse. Counsel for Appellant stated he didn't think the question was "terribly relevant." Tr. 219. The trial court said he believed it was "fair game" based on A.K.'s testimony she was scared.

{¶27} The trial court asked the witness the questions submitted by the jury. The last question the court read was whether Appellant was ever abusive to her physically, mentally, or sexually. A.K. responded mentally he was abusive from the time she was injured at work. She stated he was very controlling and manipulating, and put bruises on her twice by grabbing her arms and pushing her into a wall.

{¶28} Appellant argues the question and its answer were inadmissible at trial. Assuming, arguendo, Appellant's objection the question wasn't relevant is sufficient to preserve his argument the question and its answer called for inadmissible other acts evidence, we find the evidence of abuse perpetrated on A.K., admissible for the reasons set forth in our discussion of Appellant's third assignment of error, paragraphs 51 and 52, infra. Even had we found its admission to be error, such error would be harmless. Crim.R.

52(A) defines harmless error in the context of criminal cases and provides: "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Under the harmless-error standard of review, "the government bears the burden of demonstrating that the error did not affect the substantial rights of the defendant." *State v. Perry*, 2004-Ohio-297, ¶ 15, *citing United States v. Olano*, 507 U.S. 725 (1993).

{¶29} The victims in this case testified regarding mental, sexual, and physical abuse perpetrated by Appellant, without objection from Appellant. A.K.'s brief testimony Appellant put bruises on her arms on one occasion is cumulative of other evidence in the case concerning physical abuse perpetrated by Appellant on his family. Further, her answer regarding mental abuse was cumulative of her own earlier testimony regarding Appellant's resentment of her after she was injured and became unable to work, which required Appellant to work full time, leading to the breakdown of the marriage. We find any error in the jury's question and the answer given by A.K., viewed in light of the entire trial, was harmless.

### Venue, Identification

{¶30} Appellant argues the trial court's questioning of the victim H.K. established venue and identification after the State forgot to do so.

{¶31} During the trial court's own questioning of H.K., the trial court asked the witness what county she resided in during the incidents she described with Appellant, and she replied Morrow. He further asked her to identify Appellant.

{¶32} However, the State had previously established both venue and identification of Appellant through the testimony of A.K. She testified the home the girls grew up in was

in Morrow County, and further identified the victims' adoptive father, who the girls later named as Appellant, in the courtroom as Appellant. The girls testified the incidents occurred in the home previously described by A.K. as located in Morrow County.

**{¶33}** Further, the brief questioning regarding venue and identification was not sufficient to convey bias on the part of the trial judge to the jury, particularly as the judge instructed the jury, "Nothing that I have said or done is intended to suggest what your verdicts should be; that is entirely for you to decide." Jury instructions, page 9, ¶ 3.

**{¶34}** The second assignment of error is overruled.

III.

**{¶35}** In his third assignment of error, Appellant argues the trial court erred in admitting hearsay evidence and other acts evidence. We disagree.

**Hearsay**

**{¶36}** One of the jury's questions to A.K. related to text messages discussing the allegations with Appellant. In response to this question, the State asked A.K. if she made any Facebook posts, TikToks, or any other text messages disclosing the allegations to Appellant. A.K. answered:

> I made a Facebook post in April of 2022, but that was after he was already aware and that was because [H.K.] had went to dinner with a bunch of kids from Highland, one being her cousin Gavin by marriage and in front of the whole table of friends he said that Jay said he had to lay low because things were happening and that I was a psychopath. That's why all this was happening.

And [H.K.], she had told everybody at the table what happened to her and then she came home and told me and I was very upset. So I made a Facebook post calling him out. I did not put his name in it, but I put some of the things that he had done to the kids.

**{¶37}** Tr. 221-222.

**{¶38}** Appellant argues the statement Gavin said Appellant said he had to lay low because things were happening, and Appellant said this was all happening because A.K. was a psychopath, was double hearsay. Appellant failed to object to this testimony, and we therefore must find plain error to reverse.

**{¶39}** To establish plain error, Appellant must show an error occurred, the error was obvious, and there is a reasonable probability the error resulted in prejudice, meaning the error affected the outcome of the trial. *State v. McAlpin,* 2022-Ohio-1567, ¶ 66, *citing State v. Rogers,* 2015-Ohio-2459, ¶ 22.

**{¶40}** Appellant has not demonstrated this limited hearsay statement, in a somewhat confusing response to the jury's question regarding A.K.'s text messages, affected the outcome of the trial. Further, as noted by the State, hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement." Evid. R. 801(C). The statement was not offered to prove the truth of the matter asserted therein, i.e. what Gavin reported Appellant said, Appellant laying low because of the allegations, and A.K. being a psychopath, but rather was an explanation for why A.K. made a

Facebook post recounting the things Appellant had done to the victims. We find the evidence was not inadmissible hearsay.

## Other Acts Evidence

{¶41} Appellant argues the trial court erred in admitting the evidence discussed in his second assignment of error regarding abuse of A.K., as well as evidence of the emotional and physical abuse of the children.

{¶42} A.K.'s testimony regarding abuse is set forth in our discussion of Appellant's second assignment of error. C.M. testified she was physically abused during the time Appellant homeschooled her. She testified he would hit the kids and the dog with a piece of plumbing pipe, and shot the kids with air-soft guns and paintball guns. H.K. testified when she brought up playing club volleyball in a conversation at home, Appellant slapped her on the arm, leaving a bruise. Appellant did not object to this testimony; therefore, we must find plain error in order to reverse.

{¶43} "A trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.,* 58 Ohio St.3d 269, 271 (1991).

{¶44} Evid.R. 404(B) provides:

*Prohibited Uses.* Evidence of any other crime, wrong or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

*Permitted Uses; Notice.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

**{¶45}** Evid.R. 404(B).

**{¶46}** "Evid.R. 404(B) categorically prohibits evidence of a defendant's other acts when its only value is to show that the defendant has the character or propensity to commit a crime." *State v. Smith*, 2020-Ohio-4441, ¶ 36. Other acts evidence may, however, be admissible for another non-character-based purpose, such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B)(2). "The key is that the evidence must prove something other than the defendant's disposition to commit certain acts." *State v. Hartman*, 2020-Ohio-4440, ¶ 22.

**{¶47}** In *State v. Williams*, 2012-Ohio-5695, the Ohio Supreme Court set forth a three-part analysis for consideration of admissibility of other acts evidence:

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in

Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. See Evid.R. 403.

**{¶48}** *Id.* at ¶ 20.

**{¶49}** The admissibility of other acts evidence pursuant to Evid.R. 404(B) is a question of law. *State v. Hartman, supra* at ¶ 22. A trial court is precluded from admitting improper character evidence under Evid.R. 404(B), but it has discretion to allow other acts evidence which is admissible for a permissible purpose. *Id.*, *citing Williams*, *supra* at ¶ 17.

**{¶50}** Appellant was charged with attempted gross sexual imposition on C.M. in violation of R.C. 2907.05(A)(1), which provides in pertinent part, "No person shall have sexual contact with another…when…[t]he offender purposely compels the other person, or one of the other persons, to submit by force or threat of force." "[E]vidence of physical, emotional, and verbal abuse upon the victim or other family members, even if not included in the indictment, has been permitted in numerous jurisdictions in cases involving rape and related sex offenses." *State v. Drew*, 2008-Ohio-2797, ¶ 37 (10th Dist.), *citing State v. Worrell,* 2005-Ohio-1521, ¶ 32 (10th Dist.), *reversed on other grounds, In re Ohio Crim. Sentencing Statutes Cases*, 2006-Ohio-2109. *See, also, State v. Madsen*, 2003-Ohio-5822, ¶ 27 (8th Dist.); *State v. Williamson*, 2002-Ohio-6503 (8th Dist.). Because rape cases charged under R.C. 2907.02(A)(2) require proof of force or threat of force, evidence of the defendant's physical and psychological abuse upon the victim is "relevant and probative of a method of control used to force sex upon the victim" and is "inextricably

related" to the rape charge. *Madsen, supra,* at ¶ 28. Likewise, evidence of a defendant's prior physical abuse upon a victim explains the victim's acquiescence to the sexual abuse. *State v. Doup,* 2002-Ohio-6981, ¶ 48 (5th Dist.).

{¶51} As in a rape case, the charge of attempted gross sexual imposition in the instant case required proof Appellant purposely compelled C.M. to submit by force or threat of force. Evidence of physical and mental abuse Appellant perpetrated on the victim and other family members was relevant to establish the element of force, and was not admitted for a character-based purpose.

{¶52} In addition, the victims in this case were minors at the time of the indicted offenses. However, the victims delayed in reporting the offenses, and as a result, were all adults at the time of trial. Much of Appellant's defense at trial was to attack the credibility of the victims on the basis they failed to report the alleged sexual abuse to their mother or other authority figures earlier. Evidence of mental and physical abuse perpetrated by Appellant on the victims and other family members was relevant to explain why the victims failed to report the abuse earlier. As to A.K., the evidence was admitted specifically in response to questioning by Appellant's counsel concerning why she did not set up video surveillance in the house to monitor Appellant's activity with the children.

{¶53} We further find the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. The jury found Appellant not guilty on three of five counts, including the charge of attempted gross sexual imposition which required proof of force. It is apparent from the verdict the jury was able to consider the specific evidence separately on each indicted count of sexual abuse, and not convict Appellant of sexual abuse based on the evidence of physical and mental abuse.

**{¶54}** The third assignment of error is overruled.

IV.

**{¶55}** In his fourth assignment of error, Appellant alleges his trial counsel was ineffective for failing to object to the hearsay evidence set forth in assignment of error three, the evidence of physical and mental abuse set forth in assignment of error three, and the judge establishing venue and identification through its own questioning as set forth in assignment of error two. We disagree.

**{¶56}** A properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153 (1988). Therefore, in order to prevail on a claim of ineffective assistance of counsel, Appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668 (1984); *State v. Bradley*, 42 Ohio St.3d 136 (1989). In other words, Appellant must show counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.*

**{¶57}** For the reasons set forth in our discussion of Appellant's second and third assignments of error, we find Appellant has not demonstrated had counsel objected, the result of the proceeding would be different.

**{¶58}** The fourth assignment of error is overruled.

V.

**{¶59}** In his fifth assignment of error, Appellant argues the evidence was insufficient to support his conviction of sexual battery against H.K., under either R.C. 2907.03(A)(1) or (A)(5). We disagree.

**{¶60}** Appellant first argues there was no evidence of coercion, as required by R.C. 2907.03(A)(1). As noted earlier in this opinion, the indictment and verdict form both reflect Appellant was convicted of violating R.C. 2907.03(A)(5), and the jury was instructed solely on the elements of subsection (A)(5) on this count. Therefore, the judgment of conviction and sentence reciting the statute number as R.C. 2907.03(A)(1) appears to be a typographical error, and the State was not required to prove coercion.

**{¶61}** Appellant also argues there was insufficient evidence of penetration to establish sexual conduct. An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, paragraph two of the syllabus (1991).

**{¶62}** R.C. 2907.03(A)(5) provides, "No person shall engage in sexual conduct with another when…[t]he offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person."

**{¶63}** R.C. 2907.01 defines "sexual conduct" as follows:

(A) "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

**{¶64}** Ohio courts have consistently held if the force of an object, such as a finger, causes a victim's labia to spread, this is sufficient penetration to constitute "sexual conduct" under the statute; it is not necessary for an object to penetrate into the vagina. *See, e.g., State v. Sanchez-Sanchez*, 2022-Ohio-4080 (8th Dist.); *State v. Artis,* 2021-Ohio-2965 (6th Dist.); *State v. Melendez*, 2009-Ohio-4425 (9th Dist.); *State v. Patterson*, 2021-Ohio-2387 (5th Dist.).

**{¶65}** Regarding digital penetration, H.K. testified Appellant "would just slide his hands farther down my pants and basically finger me." Tr. 399. She further testified she remembered waking up one time while her mom was on the couch and Appellant had his hands in her pants "rubbing on my vagina." Tr. 400. She testified this probably happened five times. She testified the last of these incidents happened when she was a freshman in high school. Based on the time frame alleged in the indictment, the final incident appears to be the incident for which Appellant was convicted.

**{¶66}** Appellant argues the victim's use of the word "fingering" is insufficient to establish digital penetration. The State argues the colloquial definition of the term "fingering" is digital sex, which implies sufficient penetration for conviction. We find the victim's use of the term "fingering," as distinguished from her additional specific description of the act as Appellant "rubbing on her vagina," is sufficient evidence to demonstrate Appellant penetrated the victim with enough force to spread her labia and to constitute sexual conduct within the meaning of R.C. 2907.01(A).

**{¶67}** The fifth assignment of error is overruled.

VI.

{¶68} In his sixth assignment of error, Appellant argues the judgment convicting him of sexual battery and gross sexual imposition is against the manifest weight of the evidence.  We disagree.

{¶69} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"  *State v. Thompkins*, 1997-Ohio-52, *quoting State v. Martin*, 20 Ohio App 3d 172, 175 (1st Dist. 1983).

{¶70} Appellant was convicted of sexual battery on H.K., in violation of R.C. 2907.03(A)(5), which provides, "No person shall engage in sexual conduct with another when…[t]he offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person."  Appellant was also convicted of gross sexual imposition on H.D. in violation of R.C. 2907.05(A)(4), which provides, "No person shall have sexual contact with another; cause another to have sexual contact with the offender; or cause two or more other persons to have sexual contact when… [t]he other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."

{¶71} H.K. testified while she sat on the couch, Appellant slid his hands down her pants, "fingering" her, and rubbing on her vagina.  H.D. testified when she was seven or

eight years old, she was in an unattached garage with Appellant when he showed her his penis and put her hand on his penis.

**{¶72}** Appellant argues the testimony of H.K. and H.D. is not credible. He argues there was contradictory testimony regarding when the girls told their mother about the sexual abuse, both H.K. and H.D. voluntarily spent time with Appellant afterwards which would indicate they were untruthful about the sexual abuse, and Appellant presented the testimony of two witnesses who testified they never saw anything abnormal in Appellant's relationship with his daughters.

**{¶73}** H.K. explained she was willing to go to Olive Garden with Appellant to celebrate her birthday because it was a public place, and he had been in her life since she was a baby. H.D. admitted she moved in with Appellant after he and her mother separated to finish her senior year of high school, but testified she wasn't home much and her brother was usually at home, making her feel safer. We find the jury did not lose its way in believing the testimony of H.K. and H.D. regarding the sexual incidents perpetrated by Appellant.

**{¶74}** The sixth assignment of error is overruled.

VII.

**{¶75}** In his seventh assignment of error, Appellant argues the verdict form was sufficient only to convict him of gross sexual imposition as a fourth-degree felony because it did not include the additional element required to elevate the offense to a third-degree felony or the degree of the offense. We disagree.

**{¶76}** R.C. 2945.75(A) provides:

(A) When the presence of one or more additional elements makes an offense one of more serious degree:

(1) The affidavit, complaint, indictment, or information either shall state the degree of the offense which the accused is alleged to have committed, or shall allege such additional element or elements. Otherwise, such affidavit, complaint, indictment, or information is effective to charge only the least degree of the offense.

(2) A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged.

{¶77} However, R.C. 2907.05(A)(4) does not require the presence of an additional element to elevate the degree of the offense. The statute provides in pertinent part:

(A) No person shall have sexual contact with another; cause another to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

(C) Whoever violates this section is guilty of gross sexual imposition.

(2) Gross sexual imposition committed in violation of division (A)(4) or (B) of this section is a felony of the third degree.

**{¶78}** Because an additional element is not required to elevate a violation of R.C. 2907.05(A)(4) to a felony of the third degree, R.C. 2945.75 is not applicable, and the verdict form convicting him of a violation of R.C. 2907.05(A)(4) is sufficient to convict him of the offense as a third-degree felony.

**{¶79}** The seventh assignment of error is overruled.

VIII.

**{¶80}** In his eighth assignment of error, Appellant argues he was denied his right to a fair trial because of cumulative error. We disagree.

**{¶81}** In *State v. Brown*, 2003-Ohio-5059, the Ohio Supreme Court recognized the doctrine of cumulative error. However, where we have found the trial court did not err, cumulative error is inapplicable. *State v. Carter*, 2003–Ohio 1313, ¶ 37 (5th Dist.).

**{¶82}** In the instant case, we have not found error, as set forth in our earlier discussion of Appellant's assignments of error. Therefore, the doctrine of cumulative error is inapplicable.

**{¶83}** The eighth assignment of error is overruled.

**{¶84}** The judgment of the Morrow County Common Pleas Court is affirmed.

By: Hoffman, P.J.

Popham, J.

Gormley, J.  concur